[No. 10,666.—Department One.]

## THE PEOPLE *v.* J. VELARDE.

INFORMATION—SUFFICIENCY OF COMPLAINT.—The defendant moved the Court below to set aside the information, because the affidavit upon which the warrant of arrest was issued was not sufficient to give the Court issuing it jurisdiction.

*Held:* The motion was properly denied. The regularity of the proceeding by information did not depend in any manner upon the affidavit on which the warrant of arrest was issued, and had no connection with it.

LARCENY—VENUE—COUNTY BOUNDARY.—The defendant was convicted of larceny, and on appeal it was claimed that the witnesses for the prosecution testified to facts which were not within their knowledge, and therefore that their evidence was hearsay and incompetent.

*Held:* The matter upon which they thus testified was one of common interest, and related to the boundary line between the counties of Ventura and Los Angeles, and it is well settled that such a fact may be proved by hearsay evidence.

ID.—CONFESSION—DEFINITION.—A confession is a person's declaration of his agency or participation in a crime. The term is restricted to acknowledgments of guilt. An admission of a fact, not in itself involving criminal intent, is not to be rejected as evidence merely, because it may, when connected with other facts, tend to establish guilt.

ID.—MODIFICATION OF INSTRUCTIONS—EVIDENCE OF CHARACTER—COMPETENT EVIDENCE.—The defendant's counsel asked the Court to instruct the jury that "the good character of the defendant for honesty and integrity, is a fact in the case, to be considered by you in connection with all the other evidence in the case;" and to this instruction the Court added: "but such fact, like all others, must be proven *by competent evidence;*" and it was urged that any evidence upon the question of character which was received in the case, whether competent or otherwise, should have been considered by the jury. *Held:* The instruction was correct.

ID.—POSSESSION OF STOLEN PROPERTY.—The Court instructed the jury as follows: "The mere possession of stolen property, unexplained by the defendant, however soon after the taking, is not sufficient to justify a conviction. Yet if you believe from the evidence that the defendant was found in possession of the cattle described in the information, or claim-

ing to be the owner thereof after the alleged taking, this is a circumstance tending in some degree to show guilt, but not sufficient, standing alone and unsupported by other evidence, to warrant you in finding him guilty. There must be in addition to proof of the possession of stolen property, proof of corroborating circumstances, tending of themselves to establish guilt. These corroborating circumstances may consist of acts, or conduct, or declarations of the defendant, or any other circumstances tending to show the guilt of the accused."

*Held:* The instruction contains a correct statement of the law.

APPEAL from a judgment of conviction and from an order denying a new trial in the Superior Court of the County of Ventura. HINES, J.

A petition for hearing in bank was filed in this case after judgment, and denied.

*H. T. Gage,* for Appellant.

*A. L. Hart,* Attorney General, for Respondent.

MORRISON, C. J. :

1. The defendant moved the Court below to set aside the information, because the affidavit upon which the warrant of arrest was issued was not sufficient to give the Court issuing it jurisdiction. The motion was properly denied. The object of the statute in providing for the issuance of a warrant of arrest, is, that the defendant may be brought before the committing magistrate, and when he is once there, and an examination of the case is had in pursuance of the terms of the statute, and the defendant is held to answer, a foundation is laid for the filing of an information by the District Attorney. The regularity of the proceeding by information did not therefore depend in any manner upon the affidavit on which the warrant of arrest was issued, and had no connection with it.

2. The prosecution in this case was conducted in the Superior Court of Ventura County, and it is claimed that the evidence did not establish the venue. It would seem from the evidence that the boundary line between Ventura County and the County of Los Angeles, is, either by the statute or the survey, somewhat indefinite; but we think there was sufficient competent evidence in the case to show that the lar-

ceny was committed in the County of Ventura, or within five
hundred yards of the boundary line, and in such case the
Superior Court of Ventura County had jurisdiction.   (Penal
Code, § 782.)

It is claimed, on behalf of the defense, that the witnesses
for the prosecution testified to facts which were not within
their knowledge, and, therefore, the evidence given by them
was hearsay and incompetent.   But the matter upon which
they thus testified was one of common interest, and related
to the boundary line between the counties of Ventura and
Los Angeles, and it is well settled that such a fact may be
proved by hearsay evidence.   " Hearsay has been received in
England to establish the custom of manors, the custom of
mining in a particular district, the limits of a town, the ex-
tent of a parish, *the boundary between counties*, parishes,
hamlets, or manors," etc.   (Whart. on Ev., § 187.)   "Accord-
ingly, though evidence of reputation is received in regard to
the boundaries of parishes, manors, and the like, which are of
public interest, and, generally, of remote antiquity, yet, by
the weight of authority and upon better reason, such evi-
dence is held inadmissible for the purpose of proving the
boundary of a private estate, when such boundary is not
identical with another of a public or *quasi* public nature."
(1 Greenl. on Ev., § 145.)

The witnesses for the prosecution testified that the rancho
from which the cattle were proved to have been taken, was
within the boundary of Ventura County, *to the best of their
knowledge and belief.*   One of them testified that his knowl-
edge on the subject was derived from the reports of the peo-
ple living in that part of the county, and he further testified
that the settlers who live there claim it to be Ventura County.
The witness Mills said: " I know it is in Ventura County, be-
cause the Supervisors and officers of the county told me so,
and because the people have told me so, and from my own
knowledge, because we pay taxes and vote in Ventura County,
and the Board of Supervisors, some six years ago, decided
that it was in Ventura County."   Another witness, Stebbins,
says, that he knew the line between Los Angeles and Ventura
Counties, and the *locus in quo* was in Ventura County, "from
the fact that they pay taxes in that county, make roads in

Ventura County, vote in Ventura County, and send their children to school in Ventura County."

It would seem that the above evidence is sufficiently direct and positive to establish the venue, even if hearsay evidence was not admissible for the purpose of proving the boundary line between the two counties.

All of the foregoing evidence was objected to, on behalf of the defendant, and after it came in, a motion to strike out was made, and denied by the Court. We think there was no error in the ruling of the Court in the matters complained of. The question was fairly put to the jury by the Court, and they found that the cattle were taken from the possession of the owner in Ventura County. The evidence was sufficient to sustain the finding.

3. The counsel for the defendant attacks, with much spirit and earnestness, the instructions given by the Court to the jury; but we are unable to find any substantial error in them. We do find fault, however, with the number of instructions asked on behalf of the defense. It is almost inconceivable that such a case should have required *thirty* instructions to give the jury a correct understanding of the law, and *that* was the number given at the request of the defendant. The law was presented to the jury by these instructions in all its phases, and certainly the defendant has no just cause of complaint. It is true that some of them were slightly modified by the Court, and of these modifications we will speak hereafter.

4. The evidence showed that four head of the cattle were the property of the prosecuting witness, John Gries, and that they were feloniously taken from his possession on the fifth day of June, 1881. At the time of the taking, the cattle were not branded, but shortly afterwards they were seen in the possession of the defendant with his, defendant's, brand upon them. The explanation given by defendant of such possession, was, it is claimed, a *confession* made under circumstances which rendered it inadmissible, inasmuch as the officer to whom it was made, held out inducements to the defendant. The testimony on this point is that of Sheriff Rowland. He says: "I asked him (the defendant) to make out his brand. He made it out on a piece of paper. I looked at it and said:

'Is that your iron?' Velarde said: 'Yes, that is my father's iron, and that is the iron I now own.' I told him that Mr. Gries said that these cattle which I described to Velarde belonged to him, and that they were stolen from him. Velarde said: 'I can't help that. I have raised these cattle myself.' He says, 'There is no mistake, I have raised these cattle myself.' I told Mr. Gries what he said, and Gries went to the District Attorney and got a warrant for him. When Gries went away the defendant asked me 'what he, Gries, was going to do about it?' I said, 'I don't know, but suppose he is going to have you arrested.' Gries came back with the warrant, and I arrested the defendant. After the defendant was arrested, he stated that he had bought the cattle which Gries had described, from an American that was going through there with about twenty head of *very poor cattle,* and that he bought these six head for twenty-five dollars, and that one of them he had never marked. * * * I said to him: 'There is evidently some mistake about these cattle, and it would be better that you should tell the truth. If you purchased them, say so,' and he said: 'No, I have raised them.' This was before he was arrested. After he was arrested he said to me that 'he did buy these calves,' and I asked him why he did not say so before. 'Well,' he said, 'you was talking all the time about heifers, and these are calves.' I told him before his arrest, and before he made the several statements as to how he got the cattle, that 'it would be better to tell the whole truth about it; if he bought the cattle to say so, but he said: 'No, I raised them.'"

Speaking of confessions, the Court in *The People* v. *Parton,* 49 Cal. 637, 638, says: "The statement of the defendant to the witness, Sarah C. Kirby, did not constitute a 'confession' admissible only after proof that it was voluntary. A confession is a person's declaration of his agency or participation in a crime. The term is restricted to acknowledgments of guilt. An admission of a fact, not in itself involving criminal intent, is not to be rejected as evidence (without the preliminary proof) merely because it may, when connected with other facts, tend to establish guilt." And in *The People* v. *Strong,* 30 Cal. 157, it is said that "a confession, in criminal law, is the voluntary declaration made by a person who has commit-

ted a crime or misdemeanor to another, of the agency or participation he had in the same. (Bouvier's Law Dictionary, Confession.) The word confession is not the mere equivalent of words or statements." Mr. Greenleaf, in his work on evidence (vol. 1, § 170), speaking on this subject, says: "In our law the term admission is usually applied to *civil transactions*, and to those matters of fact in criminal cases which do not involve criminal intent; the term *confession* being generally restricted to *acknowledgments of guilt*."

The statements testified to by the Sheriff were in no sense a confession of the defendant's guilt, but, on the contrary, declarations of his innocence. If either of the facts stated by him, to wit, that he had raised the cattle, or that he had bought them, was true, it followed as a consequence that he was not guilty of the crime with which he was charged. It was only in connection with other facts established by the evidence in the case, that they became matters of evidence against the defendant. He attempted to account for the possession of stolen property, but the account given by him was a false one, as was shown by comparison with other facts proved in the case, and it thereby became a circumstance unfavorable to the hypothesis of defendant's innocence. He also said the cattle were very poor when he bought them; but it is shown by the evidence of one Ruiz, that the defendant brought the cattle to the witness' ranch in June or July, that he branded them there, and that three of them were at that time *fine American heifers.*

5. As to the modification by the Court of certain instructions asked by the defendant. It is well settled that the Court may properly qualify an instruction, whenever a qualification is required to make it truly express the law. The instruction prepared by the defendant's counsel, and presented to the Court to be given to the jury, was in the following language:

"The good character of the defendant for honesty and integrity is a fact in the case to be considered by you in connection with all the other evidence in the case."

To the foregoing instruction the Court added these words: "*But such fact, like all others,* must be proven *by competent evidence.*"

It is urged before us that it was error to qualify the instruction; that any evidence upon the question of character which was received in the case, whether competent or otherwise, should have been considered by the jury. We do not agree with the learned counsel. It was only such persons as were acquainted with the general character of the defendant for honesty and integrity, who could, under the rules of evidence, testify upon that point; and if it appeared that any witness who testified to the good character of the defendant was not acquainted with his character, the evidence of such a witness would be entitled to no weight or consideration at the hands of the jury. It is a very common thing for witnesses to support by their evidence, the character of a defendant, or a witness whose testimony has been impeached, when it clearly appears in the course of the trial that the witness has not the knowledge or information requisite to enable him to testify on the subject. In such a case, the Court may properly instruct the jury that such evidence is not entitled to any weight. We are of the opinion that all the instructions given by the Court on the question of good character are strictly in accordance with well-settled rules of law on that subject.

6. The next objection is to the following instruction:

"You are instructed that the mere possession of stolen property unexplained by the defendant, however soon after the taking, is not sufficient to justify a conviction. Yet if you believe from the evidence that the defendant was found in possession of the cattle described in the information, or claiming to be the owner thereof after the alleged taking, this is a circumstance tending in some degree to show guilt, but not sufficient standing alone and unsupported by other evidence to warrant you in finding him guilty. There must be in addition to proof of the possession of stolen property, proof of corroborating circumstances tending of themselves to establish guilt. These corroborating circumstances may consist of acts or conduct or declarations of the defendant, or any other circumstances tending to show the guilt of the accused."

The foregoing instruction contains a correct statement of the law as was held by the Court in *The People* v. *Gill*, 45

Cal. 285, and as was held also by this Court in the very recent case of *People* v. *Clough, supra.*

7. We find no conflict in the instructions which could by any possibility have operated injuriously to the defendant; and it may be regarded as a matter of surprise that there was not a serious conflict in view of the multiplicity of instructions asked for and given by the Court.

We have already remarked that the law applicable to the case was given to the jury in a manner most favorable to the defendant, and there is no error apparent in the record which would justify us in reversing the judgment.

Judgment and order affirmed.

McKinstry and Ross, JJ., concurred.