[Crim. No. 237.    Second Appellate District.—June 29, 1912.]

## THE PEOPLE, Respondent, v. WILLIAM BREEDING and NINA B. CROFT, Appellants.

CRIMINAL LAW—LIVING IN COHABITATION AND ADULTERY—SUFFICIENCY OF INFORMATION—IMPLIED AVERMENT—PROOF.—An information under section 269a of the Penal Code, as amended March 21, 1911, which charges that a male and female defendant, "on or about the 26th day of May, 1911, did willfully and unlawfully live in a state of cohabitation and adultery with each other," necessarily implies that each accused person was lawfully married to a person other than his or her codefendant.    The failure to allege in direct terms such marriage does not render the information insufficient; but it is necessary to a conviction that such implied averment must be proved.

ID.—ABSENCE OF PROOF OF MARRIAGE OF MALE DEFENDANT—RIGHT TO DISMISSAL.—Where the prosecution introduced no evidence tending

in the slightest degree to prove that the male defendant charged with such crime was married to any person, the court erred in refusing to grant his motion, made at the close of the evidence for the people, for the dismissal of the prosecution as to him.

ID.—INADMISSIBLE EVIDENCE—RELATIONS OF PARTIES PRIOR TO CODE AMENDMENT—NO OFFENSE SHOWN.—It appearing that the crime charged was under section 298a of the Penal Code, as amended March 21, 1911, which took effect May 20, 1911, by striking out the prior words "open and notorious," and that prior thereto there was no such offense as that charged in the information, the evidence of a witness offered to prove that in a conversation with the female defendant had in August, 1910, she then admitted that she was living with the male defendant, was inadmissible for any purpose. It showed no offense, and had no tendency to establish the subsequent crime charged in the information.

ID.—INSUFFICIENT PROOF OF OFFENSE CHARGED AGAINST EITHER DEFENDANT—WANT OF "OPPORTUNITY."—The offense charged against both defendants implies a counterfeit of the marriage relation; but where the evidence shows that while the female defendant and the male defendant lived in the same house, it also shows that the female defendant had two sons, one of them married, living together in the same house, and that the female defendant occupied a separate room, and that the male defendant occupied a room with the unmarried son, there is, under the circumstances, no sufficient proof of the offense charged against either of the defendants or of an "opportunity" to commit it at the period covered by the information.

APPEAL from a judgment of the Superior Court of Orange County. Z. B. West, Judge.

The facts are stated in the opinion of the court.

Dick Foye Harding, and Geo. L. Hoodenpyl, for Appellants.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

SHAW, J.—Defendants were convicted upon an information charging them with the crime specified in section 269a of the Penal Code, it being alleged that on or about the twenty-fifth day of May, 1911, they did willfully and unlawfully live in a state of cohabitation and adultery with each other, etc.

The charge of living in a state of cohabitation and adultery, an offense which can be committed by one only who is married, necessarily implies that the accused was a married person. Hence, the failure to allege in direct terms that defendants were married did not render the information insufficient. (*People* v. *Silva,* 8 Cal. App. 349, [97 Pac. 202].)

Since those only who occupy the status of married persons are capable of committing the crime with which defendants were charged (*Ex parte Sullivan,* 17 Cal. App. 278, [119 Pac. 526]; *In re Cooper,* 162 Cal. 81, [121 Pac. 318]), and since by implication the information alleged that each of the defendants was lawfully married to other than his or her codefendant, it was, therefore, necessary, in order to justify a conviction, to prove such implied allegation of marriage. As to defendant Breeding, no evidence was introduced which in the slightest degree tended to establish this essential element of the crime; indeed, no evidence at all was offered touching the question. For this reason the court should have granted the motion made at the close of the evidence offered on behalf of the people for the dismissal of the prosecution as to defendant Breeding.

Section 269a of the Penal Code, prior to the amendment thereof in May, 1911, provided that every person who lived in a state of open and notorious cohabitation and adultery was guilty of a misdemeanor. By act of the legislature, approved March 21, 1911, and which became effective on May 20, 1911, the section was amended by striking out the words "open and notorious." Prior to the time this amendment went into effect the acts with which defendants were charged constituted no offense whatever under the laws of this state. (*People* v. *Salmon,* 148 Cal. 303, [113 Am. St. Rep. 268, 2 L. R. A., N. S., 1186, 83 Pac. 42].) One Culver was called as a witness, and, after testifying that he had a conversation with defendant Croft in August, 1910, was asked to relate what she said with reference to her and Breeding living together at that time. Defendants objected to the question upon the ground that it was immaterial, since it had reference to the conduct and acts of the parties at a time when, conceding that they lived in a state of cohabitation and adultery, such conduct and acts constituted no offense. The court overruled the objection, stating that the evidence would be admitted

"for the purpose of showing the relations that these parties had prior to that time, and from that if the facts were sufficient to lead the jury to find at the time they occupied that relation they may take into account previous circumstances, but not for the purpose of establishing the crime." This statement of the court is somewhat involved and its meaning not entirely clear. Unless the evidence was admissible as tending to establish the crime, it was immaterial and should have been excluded. Assuming that the effect of the court's ruling was to admit the evidence for all purposes, we are of the opinion that it was incompetent. Conceding that the evidence tended to show that in August, 1910, when to do so constituted no offense, defendants lived in a state of cohabitation and adultery, it constituted no proof that they were living in such state after May 20, 1911, when to do so constituted a crime. It was not a status which, proven to have been created, will, in the absence of evidence to the contrary, be presumed to continue, but a relation or condition due to the acts of the parties, and which in the absence of such acts can have no existence. We agree with the learned trial judge that such evidence was inadmissible for the purpose of establishing the crime, and being inadmissible for that purpose, it could not be admissible for any other purpose; hence, it was error to admit it at all.

As used in the statute, the words "living in a state of cohabitation and adultery," mean the living or dwelling together as husband and wife and exercising the sexual rights and duties implied by such relation when legally created— in other words, a counterfeit of the marriage relation. Hence, to justify the conviction of defendants it should appear from the evidence that there existed between them an adulterous cohabitation prior to May 25, 1911, and subsequent to the date on which said amendment went into effect, namely, May 20, 1911. The only evidence touching the question as to the conduct of defendants during this period was that they resided in the same house, which consisted of a room and a kitchen downstairs and a loft or room upstairs, each of which, other than the kitchen, was used as a bedroom; that on May 24, 1911, the constable, accompanied by two other persons, went to this house about 8:30 in the evening, and after spending a half or three-quarters of an hour in watch-

ing the house, during which time they saw some person come out and re-enter the same, and°after the occupants had retired, they knocked upon the door and asked for admission, in response to which, after the lapse of some minutes, the door was opened by a son of Nina B. Croft, a young man about twenty years of age, at which time the witnesses testified that they saw defendant Breeding and another son of defendant Croft in bed in the lower room of the house; that Nina B. Croft was occupying the upper room of the building; that after knocking upon the door and demanding entrance, and before the door was opened, these witnesses heard a noise within which sounded like some one coming down the stairs, which stairway consisted of a ladder or cleats nailed upon the studding, and during this period of waiting they also heard voices engaged in conversation both upstairs and downstairs, one of the voices upstairs being that of a woman. At the time defendant Croft's sons, both of whom were upward of twenty years of age and one of whom was married, were occupying the house with defendants. This was substantially all of the evidence offered touching the period extending from May 20 to May 25, 1911. While this and other evidence tends to establish the fact that defendants resided in the same house, nevertheless, it is insufficient to show that they lived in a state of cohabitation and adultery. Indeed, it is questionable whether the evidence, when applied to the period covered by the information, even "shows opportunity."

For the reasons given, the judgment as to both defendants is reversed.

Allen, P. J., and James, J., concurred.