[Crim. No. 652.   First Appellate District.—December 30, 1916.]

## THE PEOPLE, Respondent, v. JOSEPH SCARPA, Appellant.

CRIMINAL LAW—LIVING IN COHABITATION AND ADULTERY—SUFFICIENCY OF EVIDENCE.—A living together in a state of cohabitation and adultery within the meaning of section 269b of the Penal Code, as amended in 1911, which provides that if two persons each being married to another, live together in a state of cohabitation and adultery, each is guilty of a felony, is sufficiently established by evidence that such persons went to a hotel, registered there as man and wife, and occupied the same apartment for a portion of three days in an indisputably adulterous state and relation.

ID.—ELIMINATION OF WORDS "OPEN AND NOTORIOUS" FROM CODE SECTION—INTENTION OF LEGISLATURE.—The intention of the legislature in amending section 269b of the Penal Code by striking from the section the words "open and notorious," before the phrase "cohabitation and adultery," was to make the section applicable to those persons who, while each was simulating continence in their marital relations, were at the same time maintaining such a course of illicit and adulterous conduct with another of the opposite sex as would constitute a counterfeit of the marriage relation.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. W. A. Beasley, Judge.

The facts are stated in the opinion of the court.

Nathan C. Coghlan, Charles Davison, H. L. Partridge, William F. Herron, and Edwin V. McKenzie, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

THE COURT.—This is an appeal from a judgment of conviction of the defendant upon a charge of having violated the provisions of section 269b of the Penal Code, and from an order denying his motion for a new trial.

The foregoing section of the Penal Code, as amended in 1911, [Stats. 1911, p. 426], reads as follows: "If two persons, each being married to another, live together in a state of cohabitation and adultery, each is guilty of a felony, and punishable by imprisonment in the state prison not exceeding five years." The amendment of this section made in 1911 consisted in striking from the former section the words "open and notorious," before the phrase "cohabitation and adultery." The contention of the defendant herein is that the evidence adduced at the trial was wholly insufficient to establish the charge that the defendant and the woman in question "lived together in a state of cohabitation and adultery." This contention is based upon the fact, proven at the trial, that during the several months that the defendant and a woman, Mrs. Mae Beach, were asserted by the prosecution to have maintained illicit relations with each other, the defendant was living and cohabiting with his wife, and the woman, Mrs. Beach, was living and cohabiting with her husband; and it is argued on behalf of the appellant that under such circumstances it was impossible that the defendant and Mrs. Beach could also have been living in a state of cohabitation and adultery. The effect of the argument urged in support of this contention would be that if a husband and wife were living and cohabiting together in their legitimate relation as such, it would be practically impossible for either of them to commit a violation of section 269b of the Penal Code, by engaging in or maintaining a course of illicit relationship and intercourse with another person of opposite sex, who was also living and cohabiting with his or her legitimate spouse. We are not prepared to commit ourselves to such a narrow construction of the section of the Penal Code in question, nor to give our indorsement to the cases cited by counsel for the appellant which would give color

to such a contention.   We are of the opinion that section 269b
of the Penal Code, as amended in 1911, was intended by the
legislature working its amendment through the elimination
from the former section of the words "open and notorious,"
to have application to those persons who, while each was simu-
lating continence in their marital relations, were at the same
time maintaining such a course of illicit and adulterous con-
duct with another of the opposite sex as would constitute a
counterfeit of the marriage relation.   We think that such a
state of cohabitation and adultery would not only be possible,
but that the evidence in the case before us was amply sufficient
to have justified the jury in finding that such a condition
existed between the defendant and the woman in the case.   A
brief review of the evidence will make this sufficiently plain.

The defendant, Joseph Scarpa, had been married to his
wife, Mrs. Scarpa, for a period of about twenty-five years.
They had three children—two daughters and a son, all grown
and living away from home, the girls being married, and liv-
ing, one at Pleasanton and the other in San Francisco.
Early in the month of September, 1915, Mrs. Scarpa, who
prior to that time had been residing with her husband part
of the time at their home in Mountain View, and part of the
time on their ranch in San Mateo County, went on a visit to
her daughters, spending nearly all of the next three months
with one or the other of them, and returning to her home
in Mountain View on but two occasions, and then only for
a day or two.   The defendant, Joseph Scarpa, who was en-
gaged in the business of buying and selling cattle, spent
much of his time at his ranch in San Mateo County.   In the
month of August, 1915, he met his codefendant, Mrs. Mae
Beach, upon a neighboring ranch where the husband was at
that time employed, and presently took the latter into his
employ at his ranch, whither Beach's wife went to live with
him.   The intimacy between the defendant and Mrs. Beach
dates from about this time.   They were often seen riding or
driving together, and on several occasions were observed in
attitudes and actions which were strongly suggestive of an
undue and illicit intimacy.   On a number of occasions during
several months which intervened between the defendant's
first acquaintance with the woman and the final exposure of
their adulterous relation, the defendant brought the woman
to his home in Mountain View during his wife's absence,

and there remained with her overnight. On one of these occasions the woman in the morning came down into the butcher-shop and bought the meat for breakfast, having it charged to Scarpa. During the course of these apparently continuous and increasingly intimate relations the defendant boasted to a friend that he "had a chicken up at his ranch," which he sufficiently described to identify the Beach woman, and whom he warned his friend not to interfere with. Finally on December 21, 1915, the defendant and Mrs. Beach came to San Jose, and after visiting several stores and eating places and walking arm in arm down the street, went to the Imperial Hotel in that city, where defendant registered himself and his companion as "J. Jones and wife, Mountain View," and secured a single room which the pair occupied together until the early morning hours of December 23, 1915, when their apartment was entered by detectives, who found them there in a state of undress and apparently occupying the same bed. The arrest of the pair upon the charge of adultery followed.

Upon the trial of the cause no evidence was presented on behalf of the defendant to offset in any way the inferences to be drawn from the foregoing line of testimony; and we think that from its occasional glimpses of the defendant in his relation and conduct toward his codefendant during the months intervening between August and December, taken in connection with the culminating act of his taking her into a hotel, registering there as man and wife, and occupying the same apartment for a portion of three days in an indisputably adulterous state and relation, the jury were amply justified in drawing the conclusion that the relation of the parties during these several months was not that of mere casual and disconnected acts of adultery, but that during the larger part of that time, at least, such a continuous course of illicit conduct had existed as would amount to their living together in a state of cohabitation and adultery, and as thus sufficing to satisfy the terms of the Penal Code rendering such conduct criminal.

This being so, it follows that the verdict of the jury finds sufficient support in the evidence; and this being the only point made upon appeal the judgment and order must be affirmed, and it is so ordered.

A petition for a rehearing of this cause was denied by the district court of appeal on January 29, 1917, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 26, 1917.

Angellotti, C. J., dissented from the order denying a hearing in the supreme court, and filed the following opinion on February 27, 1917:

ANGELLOTTI, C. J.—I dissent from the order denying a hearing in this court after decision of the district court of appeal, for the reason that however discreditably the evidence, as stated in the opinion, reflects upon the defendant, from the standpoint of morals, I do not think it makes a case within the purview of section 269b of the Penal Code, under any fair construction of the provisions of that section. To constitute the felony there defined there must be, according to the express terms, *a living together in a state of cohabitation,* which means, as was well said in *People* v. *Breeding,* 19 Cal. App. 362, [126 Pac. 181], "the living or dwelling together as husband and wife, . . . in other words, a counterfeit of the marriage relation." I think we all agree that there is nothing in the evidence to show any such situation, unless it is to be found in the evidence as to the conduct of the parties in the city of San Jose between the evening of December 21, 1915, and the "early morning hours" of December 23, 1915. To hold that this transitory visit of these parties to the San Jose hotel, obviously made solely for the consummation of their immoral purposes, constituted the *living together* intended by the statute appears to me to be unwarranted by any fair reading of the law.

Lorigan, J., concurred.