[Crim. No. 1488.   Second Appellate District, Division One.—October 13, 1927.]

THE PEOPLE, Respondent, v. HELEN M. CASSIDY et al., Appellants.

E. W. Bartlett, Henry G. Bodkin and O'Connor, Findlay & Daniels for Appellants.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and James S. Howie for Respondent.

HOUSER, J.—Defendants appeal from a judgment of conviction of the crime of adultery and from an order of the trial court denying their motion for a new trial.

It is first urged by appellants that the evidence was insufficient to justify the verdict. Without attempting to set forth more than the substance of the material evidence introduced by the prosecution, it appears therefrom that the defendants were not married one to the other, but that at the time the offense was committed each of them was married to some other person; that defendant Cassidy, with one of her infant children, left her husband in Colorado and came to California; that prior thereto she had left her husband temporarily and during her absence had "met" her co-defendant; that while living with her husband she received letters and Christmas presents from her co-defendant; also sufficient money from him to enable her to leave

her husband in Colorado and pay her railroad fare to California; that for a period of about two months thereafter defendant Cassidy occupied apartments in a court—defendant McLean paying the rent therefor, and often being seen leaving the apartments at between 6 and 6:30 o'clock in the morning; that thereafter defendant McLean occupied a room in a hotel where defendant Cassidy later took up her residence and for a short time occupied a room therein on a floor different from that on which her co-defendant had his room, following which defendant Cassidy took a room adjoining and opening into that of her co-defendant and for which two rooms there was but "one bath and toilet"; that defendant McLean made the necessary arrangements for renting the said rooms, paid the rent therefor, bought the meal tickets on which Mrs. Cassidy received her meals at the hotel, and agreed to pay for dresses purchased by defendant Cassidy; that the general outward conduct of the two defendants one toward the other was such as ordinarily exists between a husband and a wife; that the door between the two rooms occupied by the two defendants, if not always open, was only closed; that each of the defendants passed freely from one room to the other—defendant McLean on one occasion having been seen clad in his pajamas only in the room occupied by defendant Cassidy; that defendant Cassidy kept some of her clothing in the room occupied by her co-defendant; that sometimes she drove the automobile owned by defendant McLean, and that the two defendants were frequently seen riding together in defendant's automobile; that in the presence of third persons defendant McLean addressed his co-defendant as "honey," referred to her as his wife, and that defendant Cassidy had been seen sitting in the lap of her co-defendant; that the infant child of defendant Cassidy was lodged and cared for elsewhere than in the hotel where the two defendants roomed, and that defendant McLean arranged and paid for the room, board, and care of the child at such place; that defendant Cassidy stated that she had objected to going to live with her co-defendant at the hotel "because it was too open"; that she and her co-defendant had been married in Mexico, admitted that they sustained meretricious relations one toward the other, and that by reason thereof she had become afflicted with "female trouble"; that each

of the defendants made a statement to the effect that they had made various trips together and had registered at different hotels as "man and wife."

Section 269b of the Penal Code provides in part as follows: "If two persons, each being married to another, live together in a state of cohabitation and adultery, each is guilty of a felony, . . . "

■ It is the contention of appellants that the facts hereinbefore stated do not sufficiently show that the defendants lived together in a state of cohabitation and adultery within the meaning of the statute.

In *People* v. *Breeding*, 19 Cal. App. 359, 362 [126 Pac. 179, 181], it is said: "As used in the statute, the words 'living in a state of cohabitation and adultery' mean the living or dwelling together as husband and wife and exercising the sexual rights and duties implied by such relation when legally created—in other words, a counterfeit of the marriage relation. Hence, to justify the conviction of defendants it should appear from the evidence that there existed between them an adulterous cohabitation, . . . "

In the case of *People* v. *Scarpa*, 32 Cal. App. 453 [163 Pac. 882], the rule is announced in effect that where two persons, each of whom is married to another, live together in a state of cohabitation and adultery, each of them is guilty of a felony, and that the commission of the crime may be established by a showing that they were occupying such a position one toward the other "as would constitute a counterfeit of the marriage relation." See, also, *People* v. *King*, 26 Cal. App. 94 [146 Pac. 51]; *People* v. *Bealey*, 81 Cal. App. 648 [254 Pac. 628].

Judged by the facts as hereinbefore stated and the law as laid down in the cases to which reference has been had, it is clear that the jury was justified in determining that the defendants were living together in a state of cohabitation and adultery, and therefore that the contention of appellants to the effect that the evidence was insufficient to support the verdict cannot be sustained.

■ Appellants further contend that on the hearing of the action prejudicial error was committed by the trial court in the admission of certain evidence over the objection of defendants. Such evidence consisted of circumstances which tended to establish the commission of adul-

terous acts by the defendants outside the county within which the defendants were charged with the offense on which they were tried.

In the case of *People* v. *Koller*, 142 Cal. 621 [76 Pac. 500], where it appears that the defendant was prosecuted on a charge of incest, in ruling on a point similar to that here under consideration the court said in part:

" . . . It is now the settled rule in this state that evidence of prior acts of incestuous intercourse are admissible. (*People* v. *Stratton*, 141 Cal. 604 [75 Pac. 166].) And while we recognize that there is a conflict in the authorities as to the admissibility of evidence of subsequent acts, we are of the opinion that the better rule, and the one sanctioned by the weight of authority, is, that acts of improper familiarity, or illicit intimacy, or relations between the parties, subsequent as well as prior to the act charged in the information relied on by the prosecution for a conviction, are admissible as corroborative evidence, where they tend to show a continuous, illicit relationship. . . . " To the same effect, see *People* v. *McDonald*, 167 Cal. 545 [140 Pac. 256]; *People* v. *Christian*, 48 Cal. App. 646 [192 Pac. 182]; *People* v. *Branch*, 77 Cal. App. 384 [246 Pac. 811]; *People* v. *Jones*, 76 Cal. App. 144 [244 Pac. 101].

It must therefore be concluded that in the admission of the evidence to which appellants refer no error was committed by the trial court.

In the same connection, appellants complain that on the trial of the action evidence was admitted of the fact that on the trip made by defendant Cassidy from Colorado to California, "she met a friend, or took up with a man as a friend, and went with him on a trip to the Grand Canyon of Colorado."

It appears that after the jury had been impaneled the district attorney, in outlining what he expected to prove made a statement which included the remark which is now the subject of appellants' specification of error. But nowhere in the record does it appear that any evidence was offered of the fact to which reference was thus made; nor was any objection made at any time to the statement made by the district attorney. It would follow that appellants are in no position to complain.

■ Appellants make further criticism of the admission in evidence by the trial court of what is termed a confession of guilt by the defendants, without a sufficient or proper foundation having been first laid for the introduction of evidence of such alleged confession. But as to such specification of error on the part of appellants the record discloses the fact that the alleged confession amounted to nothing more that an admission by the defendants in substance that at a time antedating that specified in the accusation of the defendants and at a place outside the county where it was alleged that the offense of defendants was committed the defendants had lived together in the same house and had sustained sexual relations one with the other.

In the case of *People* v. *Ferdinand,* 194 Cal. 555, 568 [229 Pac. 341, 346], it is said: "An admission as applied to criminal law is something less than a confession, and is but an acknowledgment of some fact or circumstance which in itself is insufficient to authorize a conviction, and which tends only toward the proof of the ultimate fact of guilt. On the other hand, a confession by a defendant leaves nothing to be determined, in that it is a declaration of his intentional participation in a criminal act, and must be a statement of such a nature that no other inference than the guilt of the defendant may be drawn therefrom. (*People* v. *Strong,* 30 Cal. 151; *People* v. *Parton,* 49 Cal. 632; *People* v. *Velarde,* 59 Cal. 457; *People* v. *Miller,* 122 Cal. 84 [54 Pac. 523].) As stated in *Michaels* v. *People,* 208 Ill. 603 [70 N. E. 747], citing 8 Cyc. 562; 1 Greenleaf on Evidence, sec. 170; *Johnson* v. *People,* 197 Ill. 48 [64 N. E. 286]: 'A confession is a voluntary acknowledgment of a person charged with the commission of a crime that he is guilty of the offense. It is a voluntary declaration by a person charged with a crime of his agency or participation in the crime. It is not equivalent to statements, declarations, or admissions of facts criminating in their nature or tending to prove guilt. It is limited in its meaning to the criminal act, and is an acknowledgment or admission of participation in it.' And see, also, *Riley* v. *State,* 1 Ga. App. 651 [57 S. E. 1031]; *Burnett* v. *State,* 86 Neb. 11 [124 N. W. 927]; *Ransom* v. *State,* 2 Ga. App. 826 [59 S. E. 101]; *Shelton* v. *State,* 144 Ala. 106 [42 South. 30]; *State* v. *Campbell,*

73 Kan. 688 [9 Ann. Cas. 1203, 9 L. R. A. (N. S.) 533, 85 Pac. 784]; *State* v. *Royce,* 38 Wash. 111 [3 Ann. Cas. 351, 80 Pac. 268]."

It is therefore clear that the evidence relating to the statements made by the defendants did not amount to a confession, but that such statements were but admissions of circumstances which constituted some evidence which tended to establish their guilt of the crime of which they were charged. ▇ With reference to an admission, as distinguished from a confession, the rule is well settled that no foundation to the effect that such admission was freely and voluntarily made, without hope of reward or immunity from punishment, is required for the introduction in evidence of such admission.

▇ Appellants also predicate error upon the alleged misconduct of the district attorney in commenting upon the fact that neither of the defendants testified on the trial of the action. The remarks of the district attorney to which appellants now object were as follows:

"All the evidence that has been presented here, everything placed before you, everything that we could gather, as counsel on the other side told you, everything that we could present has been presented, and some of it doubtful in my estimation, and doubtless in yours, but everything we could get, and everything that the law entitles us to present here under oath, we have presented to you for what it is worth; and all that you have, good or bad, all that you have, comes from the prosecution, not one single iota or statement of it denied, not one witness against it. In whose power, I ask you, within whose mind and heart lies the power and the control of the situation to tell you whether it is true or not true? But they stand on their constitutional rights of the presentation of evidence, and the doctrine of reasonable doubt, and no evidence whatsoever has been presented on the other side. . . . he sits here and he has never by any witness for the defense told you anything to the contrary, and how can you believe anything else."

No immediate objection was interposed by the defendants to the comments made by the district attorney, but within a short time after such statement was made, defendants did object "to the remark insinuating an opinion

in regard to the defendants not taking the stand," and requested the court to instruct the jury that such remarks should be disregarded by it—to which request the court acceded by instructing the jury that "if there have been any remarks along that line, or anything from which you might infer there was any comment in that direction, you will kindly disregard it." No instruction other than that to which reference has been had was requested by the defendants; from which fact it must be assumed that, so far as the purported instruction was concerned, defendants were satisfied.

There can be no question but that a comment by the district attorney on the fact that a defendant has not testified in the action in which he is being tried constitutes error. An examination of the remarks made by the district attorney in the instant case shows that while no direct reference was made by him to the fact that neither of the defendants had been called as a witness for the defense, at least an insinuation of such fact was present. The substance of the statement was that all the evidence in the case had been produced by the prosecution; that it was within the power of the defendants either to affirm or to deny the truth of such evidence, but that they had stood on their constitutional rights and had failed to present any evidence in their own behalf. The statement closed with a query to the jury as to "how can you believe anything else?" (that is, anything other than the evidence produced by the prosecution). It would thus appear that the reference to the fact that the defendants personally had not testified in the case was not stressed; to the contrary, the district attorney was directing particular attention to the fact that the evidence presented by the prosecution was uncontradicted from *any* source, and therefore that the probability was that such evidence was true. However, though slight the comment, the conduct of the district attorney in the premises is not to be commended, but rather condemned. It constituted error; although, considering the circumstances of its commission, together with the prompt instruction to the jury by the judge of the trial court, the effect of such comment was necessarily negligible. In view of what appears to be the overwhelming evidence of the guilt of the defendants, it is clear that the error did not result in a miscarriage of

justice. (Sec. 4½, art. VI, Const.; *People* v. *Nakis,* 184 Cal. 105, 116 [193 Pac. 92]; *People* v. *Kizer,* 22 Cal. App. 10, 20 [133 Pac. 516, 521, 134 Pac. 346].)

The judgment and the order denying defendants' motion for a new trial are affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 3, 1927, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 12, 1927.