[Crim. No. 817.   Fourth Dist.   Aug. 14, 1950.]

THE PEOPLE, Respondent, v. OTIS STEMBRIDGE,
Appellant.

Morris B. Chain for Appellant.

Fred N. Howser, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

MUSSELL, J.—The defendant has appealed from a judgment of conviction of murder in the second degree and from an order denying a new trial.

In an information, the defendant, Otis Stembridge, and his codefendant, Loran Roulain, were accused of the murder of one John L. Isaaks, and in a second count both defendants were charged with the crime of burglary in entering the Oasis Club in Fruitvale, with intent to commit a felony.

A jury found defendant Stembridge guilty of murder in the second degree, not guilty of the charge of burglary, and acquitted Roulain on both charges.

The material facts, summarized briefly, are as follows: The deceased, John L. Isaaks with his wife and several friends, arrived at the Oasis Club about midnight on December 15, 1949. An hour or so later there was a disturbance across the street. Defendant Stembridge, who was then in the club, with several others rushed out to see what was happening and found that a man and his wife were engaged in a fight. Two of the spectators separated the contestants and Stembridge then came through the crowd, struck the man with his fist, knocked him down and then turned and ran back into the club.

A number of spectators returning to the club noticed that the bartender, Art Schmidt, was talking to a man who was

later identified as Roulain. Roulain said he wanted to get in; that his partner was inside, and Stembridge, on the inside, was asking the bartender to let Roulain in. Schmidt told Roulain that he would let his partner out but didn't want anyone else in; that he was not serving any more drinks and was going to close up. He then let Stembridge out and the two men left together. They were heard to say "Well, we will see you" or, as one witness put it, Roulain said either "I will see you Art" or "I will get you Art."

Shortly thereafter, at about 10 minutes to 2, the occupants of the Oasis Club started to leave. Some of them were outside getting into their cars when they noticed a car driving up and that one man in it, later identified as Stembridge, had a 22 rifle. Stembridge motioned to the crowd and said "Stand back. It is going to be a fair fight." Roulain then went into the club and Stembridge told those gathered outside that he would kill anyone that moved. Mrs. Isaak, the wife of the deceased, walked up to Stembridge and was told by him to stand back. The deceased walked toward his wife and Stembridge said to him "You are within an inch of death." Stembridge said he meant business and fired two shots into the air, looked in the window of the club and made the remark that it was not a fair fight; that there were "two to one in there"; that "there was another man in there and he was going to kill him too." Stembridge fired two shots into the café, turned and fired twice at the deceased, who was standing from 6 to 10 feet away. One bullet struck Isaak on the right side and the other entered his back. He fell and died within a few minutes. The medical testimony was that either bullet wound would have caused his death.

None of the witnesses saw anything in the hands of the deceased at the time he was shot, or at any other time, and the uncontradicted testimony is that the deceased was several feet distant from the defendant when the shots were fired.

Mrs. Isaak testified that after the defendant shot her husband, he said "Stand back or I will kill you too"; that Stembridge told her not to take a step or she would get what her husband got.

One of the witnesses, Amanda Jordan, heard the statement made by Stembridge to Mrs. Isaak and also heard the defendant, while at the window with the gun, say "I will kill you, Art."

Alice Hallmark, one of the employees at the Oasis Club, testified that after the deceased was shot, Stembridge made

the remark "I will either kill him or them" or "I will kill some more before I leave."

Mrs. Isaak further testified that while Stembridge was trying to see inside the café, he was also watching the crowd outside; that the deceased took her around to their car and the defendant said "I see you over there. Don't take another step"; that they stopped and the defendant turned his attention back to the window again; that her husband was in front of his car when she heard the shot. She saw him turn to the left after the first shot and fall to the ground, face down; that she took a step forward toward him and the defendant then said "Don't take a step, or I will give you the same thing he got"; that she heard a crash and saw Roulain coming out of the window of the café and heard Stembridge say to him "Come on out of there. I just shot a man."

Stembridge and Roulain then drove away. After they had left, the bartender was found lying unconscious on the floor of the club and a witness, Mrs. Tuckness, in a hysterical condition by the telephone.

Mrs. Tuckness testified that she, with several others, left the café at about the time Roulain rushed up to the door to enter it; that Roulain pushed his way in and knocked the bartender down; that she rushed in and stood near the door until the bartender told her to lock it; that the bartender and Roulain were both on the floor and the bartender was "getting the worst of it"; that she picked up a chair or a stool and hit Roulain with it several times; that she heard a shot and then locked herself in the restroom; that she remained there about a minute and a half and then came back out to see how the bartender was "making it"; that both men were lying on the floor in front of the door. She then heard another shot and saw Stembridge break the window out and stick his head in the opening. He pointed at the bartender and said something to Roulain; that Roulain then got up and crawled out of the window and the two men left.

Stembridge and Roulain were arrested shortly thereafter and the 22 rifle used by Stembridge was found in the car in his possession.

After his arrest, Stembridge told a deputy sheriff that he and Roulain got into a fight with Art Schmidt in regard to Schmidt locking the door and that they went back to their car and got the 22 rifle; that they then went back to the front

of the Oasis and he grabbed the barrel of the gun, broke out the plate glass window in front with the butt of the gun and then fired two or three warning shots over the heads of the people inside; that then he was struck from behind by Isaak and that he turned and fired one shot at him. In a later statement, Stembridge said that he had been at the Oasis Club; that there had been a disturbance across the street; that he went across to see what was happening and that a man and woman were "having trouble fighting"; that he tried to separate them, took a "poke at the fellow" and knocked him down; that the bartender wouldn't let Roulain into the bar; that after a few seconds of arguing, he and Roulain got in the car, and decided to go to Stembridge's home; that they went there for the purpose of obtaining a gun to take back to the Oasis to see that Roulain had a fair fight with Art Schmidt, the bartender; that after a scuffle, Roulain went in the bar and that he, Stembridge, walked up to the window, saw two people fighting Roulain and that he fired two shots to keep the crowd back because he didn't want "everybody jumping in"; that he fired two shots inside as a warning; that then somebody hit him from behind and he went halfway down to his knees and that he remembered the gun going off but not whether it hit anybody.

Stembridge testified in his own behalf in the trial and there claimed that he lost consciousness after the alleged blow on the head and that he did not recall firing the shots which killed the deceased.

The defendant contends: (1) That the court committed error in failing to give certain requested instructions; (2) that the district attorney was guilty of prejudicial misconduct; and (3) that the verdict of the jury was inconsistent.

The defendant first argues that the court erred to his prejudice in failing to give an instruction on manslaughter. This argument is based upon the claim that the shooting of John Isaak resulted either from defendant's acts of self-defense or as a result of accident or misfortune in the heat of passion upon sudden and sufficient provocation and without malice and without premeditation. However, there is no evidence in the record before us that the defendant was acting in self-defense at the time he shot the deceased and there is no evidence of sudden or any provocation to justify the homicide.

Appellant's defense was based on the claim that he was rendered unconscious as the result of a blow on the head.

In this connection the court instructed the jury to the effect that they should find the defendant not guilty of murder if there was any reasonable doubt that at the time of the firing of the fatal shots at John Isaak the defendant, Otis Stembridge, was not conscious of his act by reason of a blow on the head suffered immediately preceding the firing of the shots. Although there was no evidence that the defendant acted in self-defense, the court gave an instruction upon that subject. No instruction on the subject of manslaughter was offered by the defendant. ▆ While it is the rule that where there is sufficient evidence upon which a jury may return a verdict of manslaughter, an instruction defining it should be given even if not offered by the defendant, it is not error to fail to give an instruction on manslaughter when there is no evidence to support a verdict finding the defendant guilty of that crime. (*People* v. *Manzo*, 9 Cal.2d 594, 598 [72 P.2d 119]; *People* v. *DuBois*, 16 Cal.App.2d 81, 86 [60 P.2d 190].) The record before us discloses no possible theory upon which to rest an argument that the defendant was guilty of manslaughter. Under the evidence he was guilty of murder or not at all and an instruction on manslaughter was inapplicable. (*People* v. *Shannon*, 203 Cal. 139, 143 [263 P. 522].)

The jury was fully instructed as to the crime of murder and were told in effect that if they were not satisfied that the defendant was guilty of that offense they must acquit him altogether. It is to be presumed that the jury heeded the court's instruction in this respect and performed their whole duty in accordance with it; that if they were not satisfied beyond a reasonable doubt that the defendant was guilty of murder, under the instructions they would have acquitted him. (*People* v. *Watts*, 198 Cal. 776, 796 [247 P. 884].)

▆ The evidence shows that Stembridge was guilty of murder, and murder alone. He left the Oasis Club, went to his home, concealed a 22 rifle in his car and returned with his codefendant to the club with the admitted intent to see that there was a "fair fight." In order to carry out his intent and design when Roulain entered the club, Stembridge remained outside, and, raising the rifle, threatened all of the bystanders that they were within an inch of their lives, that they were not to move, that if they moved, he would kill them and that it was to be a "fair fight." He was heard by some of the witnesses to shout a threat to kill the bartender; he fired two shots outside of the café in a general direction and above

the heads of the bystanders, and two shots into the club. He fired one shot at the deceased, John Isaak, and as Isaak, who was within about 5 feet, turned, he fired a second shot into his back. He told the wife of the deceased that she would get the same as her husband got; he shouted inside to Roulain that he "had killed a man." This evidence is entirely insufficient upon which to base a verdict of manslaughter and fails to show any facts which would warrant a belief that the defendant shot Isaak "upon any sudden quarrel or heat of passion." Under the facts shown, the court was not required to give, on its own motion, a manslaughter instruction.

The defendant claims error in the court's refusal to give an instruction as to the duty of the jury to acquit if the homicide was found to be accidental or excusable. However, there was no evidence adduced to justify the giving of the requested instruction.

It is also claimed that the court erred in refusing to instruct the jury as to the burden of proof required to be produced by the prosecution to overcome the claimed self-defense.

The prosecution established the killing of the deceased by the defendant and there was a definite showing that the crime committed was murder. The burden was then on the defendant to show circumstances in mitigation. (*People* v. *Jones,* 160 Cal. 358, 371 [117 P. 176].) This burden he did not attempt to assume, but merely raised the defense that he was unconscious. This was fully covered by the instructions. The instructions given by the trial court relating to self-defense were sufficient under the evidence.

The court did not err in its refusal to give defendant's instruction relating to circumstantial evidence since there was no circumstantial evidence in the case to which this instruction could apply, as the evidence of the eyewitnesses to the homicide was that the killing was committed by the defendant.

We have examined the other offered and refused instructions and conclude that no error resulted in the court's failure to give them.

It is next claimed that the court erroneously failed and neglected to give a responsive answer to a query directed to it by the foreman of the jury as to whether the jury might return a verdict of guilty as to one defendant and not guilty as to the other. The court had instructed the jury that they might convict one or both of the defendants. When the ques-

tion was asked by the foreman of the jury, the court reread the instructions previously given and told the jury, in effect, that if they so interpreted the facts, they could convict one and acquit the other. The defendant's contention as to this point is entirely without merit.

The contention that the court erred in not giving instructions relating to conspiracy is likewise without merit. This was one of the theories of the prosecution and was the basis of naming the codefendant, Roulain, as a party defendant to the murder charge. However, conspiracy was not charged in the information and the court did give an instruction requested by the defendant sufficiently covering the subject.

Several statements of the prosecuting attorney are assigned as constituting prejudicial error. The first statement was in reference to the testimony of a defense witness who claimed to have found a broken bottle at the scene of the crime. The prosecutor stated that it was very strange to him that defense counsel could find a man who would testify that he had found a whiskey bottle on the scene the next day and referred to the conduct of an attorney in another criminal case. Defendant's counsel made no objection to the statement and at the time apparently did not consider it prejudicial to him. While the statement was improper, the harmful result, if any, could have been obviated by appropriate instruction of the trial court and the defendant may not predicate error in this court in the absence of assignment of such alleged misconduct as error and a request to the trial court to instruct the jury to disregard it. (*People* v. *DuBois, supra,* p. 87.)

Defendant contends that the prosecutor's statement in his closing argument that the judge had denied a motion to dismiss the burglary charge constituted prejudicial misconduct. No prejudice can be attributed to the statement inasmuch as both defendants were found not guilty of the burglary charge.

Defendant complains of the argument of the prosecutor referring to the automatic right of appeal in the case of a verdict of murder in the first degree without recommendation. This objection is without merit as the defendant was not found guilty of murder in the first degree and the reference to the automatic appeal in cases calling for the death penalty has no application in the instant case.

The jury was properly instructed that statements made by counsel in the course of the trial, not as stipulations, were not to be taken by them as evidence of any facts in the case.

The remarks made by the prosecuting attorney in his closing argument, while somewhat improper, do not constitute grounds for reversal. As was said in *People* v. *Hadley,* 84 Cal.App.2d 687, 693 [191 P.2d 517] :

"In determining the prejudicial effect of errors occurring in the trial of a case an appellate court, by the mandate of article VI, section 4½ of the California Constitution, must review the entire case for the purpose of determining whether a miscarriage of justice has resulted or the ends of justice subserved. It is only ' "in a close case where the evidence is sharply conflicting, substantial and serious errors vital to defendant that may have resulted in a miscarriage of justice must be regarded as prejudicial and grounds for reversal." ' (*People* v. *Reese,* 65 Cal.App.2d 329, 337 [150 P.2d 571].)" and as was said in *People* v. *Cabaltero,* 31 Cal.App.2d 52, 62 [87 P.2d 364] :

"It is held, however, that where the evidence clearly supports the conviction and it appears that the jury in all probability would have rendered a verdict of guilty even in the absence of any dereliction on the part of the district attorney, a reversal is not justified."

The evidence before us is conclusive as to the defendant's guilt of the crime charged and we cannot hold that there was a miscarriage of justice. (*People* v. *Godsey,* 71 Cal.App.2d 82, 93 [162 P.2d 46] ; *People* v. *Kizer,* 22 Cal.App. 10, 20, 21 [133 P. 516, 521, 134 P. 346] ; *People* v. *Cassidy,* 86 Cal.App. 45, 53 [260 P. 313] ; *People* v. *Green,* 96 Cal.App.2d 283, 291 [215 P.2d 127].)

As a final ground for reversal of the judgment, the defendant contends that the verdict of the jury was inconsistent in that both defendants were not convicted. There was no inconsistency in the verdict as it was within the jury's province to find one defendant guilty and the other not guilty. Both defendants were found not guilty of the burglary charge. As to the murder charge, the evidence shows that Stembridge fired the fatal shots. There was a deliberate intention on his part to kill, evidenced by statements made by him at the time of the killing and subsequent thereto. There was a marked difference in the evidence as to the actions of each of the defendants. Burglary and murder are two separate and distinct offenses and the acquittal of the burglary count did not preclude a conviction on the charge of murder. As was said in *People* v. *Taylor,* 88 Cal.App.2d 983, 987 [199 P.2d 751] :

"The fact that certain defendants may escape conviction

for their crimes is not any legal or logical reason why another defendant, where substantial evidence has been introduced to sustain his conviction, should be exonerated and be permitted to escape punishment for his crime.''

Judgment and order affirmed.

Barnard, P. J., concurred.

A petition for a rehearing was denied August 28, 1950, and appellant's petition for a hearing by the Supreme Court was denied September 11, 1950.