[Crim. No. 1596.    Second Appellate District, Division Two.—April 6, 1928.]

THE PEOPLE, Respondent, v. SALVADORE MAGGIO, Appellant.

R. B. Whitelaw and Ernest R. Utley for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Elmer W. Heald, District Attorney, and E. B. Patterson, Deputy District Attorney, for Respondent.

CRAIG, J.—The appellant was charged by information, and found guilty by a jury, of having, on or about August 23, 1927, violated section 367c of the Penal Code, which said section provides in part that:

"Whenever an automobile, . . . strikes any person, or collides with any vehicle containing a person, the driver of, and all persons in, such automobile, . . . who have or assume authority over such driver, shall immediately cause such automobile . . . to stop, and shall render to the person struck, or to the occupants of the vehicle collided with, all necessary assistance including the carrying of such person or occupant to a physician or surgeon for medical or surgical treatment, . . . and . . . shall further give to the occupants of such vehicle or person struck, the number of such automobile, . . . together with the name and address of the driver of such automobile, . . . also the name of the owner thereof and the name of the passenger; . . . "

This is an appeal from the judgment, and from an order denying a motion for a new trial.

It appears that at about 2:30 or 3 o'clock A. M., on August 22 or 23, 1927, the exact date being questioned by the parties, W. B. Oswell and Estelle Oswell, his wife, left Yuma, Arizona, in a coupe, driving in a westerly direction toward El Centro, California, which is about sixty-two miles distant from Yuma, at the rate of thirty or thirty-five miles per hour; that when they had proceeded about thirty-seven miles on their journey their automobile collided with a truck which was traveling easterly at about the same rate of speed; that at the point of contact the Oswell car was traveling at about four or five miles per hour. As a result of the collision the coupe was thrown across the thoroughfare, the left front wheel was bent under the machine, and its running-board and fender were torn off. Mrs. Oswell was thrown to the pavement and was injured. The truck proceeded easterly toward Yuma, and although Oswell attempted to obtain its number or other marks of identification, the darkness of the early hour rendered this impossible.

On the morning of August 22, 1927, Maggio Brothers, Incorporated, an El Centro produce company, employed one A. Pecararo as a truck driver. The latter had not theretofore been in Yuma, and did not know the way from El Centro, nor the location of his employer's customers. At 3:30 or 4 o'clock A. M. of the date last mentioned, Pecararo left El Centro with a Fageol truck loaded with fruit belonging to the corporation, which was driven over the same route as that followed by the Oswells, and arrived at the Yuma quarantine station at about 7 or 7:30 A. M. of that day. It is apparent, and is not denied, that upon this occasion appellant accompanied Pecararo to Yuma, under the direction and authority of Maggio Brothers, "in order that he might point out the place of business of the corporation's customers."

It is contended by appellant that the truck did not collide with any automobile on the morning of August 22, 1927, and that on the 23d, the date on which the offense is charged by the information, he drove a Chevrolet coupe to Yuma, and that Pecararo drove the Fageol truck to Calexico, in company with another man. That appellant was in Yuma on both dates we think is conclusively established by the evidence. It is urged from the foregoing that since his truck encountered no accident on August 22d, and was not driven upon the highway in question on August 23d, the evidence does not support the verdict and judgment. The respondent contends that all of the evidence tends to show that, regardless of the date, appellant was with the truck at the time of the accident, that he admitted having collided with another machine on his way toward Yuma, and that witnesses who attempted to fix the date were not positive that the accident occurred on August 23d.

W. B. Oswell, the complaining witness, testified on direct examination: "On the 23d, the way I've got it"; on cross-examination, "on or about that date, that is what I say, yes, sir," and on redirect examination, "I can say it was on the 23d, I will have to say on the 23d, the morning of the 23d." Mrs. Oswell testified, "I think it was the morning of the 23d; there has been so much happened since that, I think it was that morning that we left." T. J. Hart, the quarantine inspector at Yuma, testifying about

a conversation with appellant, in which he admitted he had been in an accident on the day of the conversation, swore that the conversation was on or about the 23d, and when asked to be positive by counsel for the defendant, he replied: "I am not absolutely certain, I think it was on the 23d, but probably it could have been on the 22d. . . . I could not swear it was on the 23d." The jury were instructed that the exact time of the commission of an alleged offense charged in the information is not material, "but any time if proven, on or about August 23, 1927, the time alleged in the information, would be sufficient as to the time thereof, but you cannot convict at all except for specific acts charged in the information, as committed on or about August 23, 1927." We think it obvious that under this instruction, and from further evidence, which we shall next consider, the jury may well have concluded that all of the witnesses were uncertain as to whether the offense was committed on August 22, 1927, when appellant was in charge of the truck and its driver, or on the following morning, but that in fact it was committed on the former date, and as charged in the information.

The witness Hart further testified that two other automobiles drove in behind appellant's truck at the quarantine station during the inspection, and that having overheard the occupants of the rear machines talking of an accident, the witness asked appellant, "Did you have an accident this morning, and he replied he did have one, and I asked him where it happened, and he said it was just on the east side of Holtville, and I asked him if he stopped after he had the accident and he said he did not." D. E. Hunt, who conducted a filling station between Yuma and Holtville, on said highway leading to El Centro, testified that "on or about the 23d" of August, 1927, he had learned of a collision caused by appellant's truck earlier in the day, and that when appellant and Pecararo "came back that afternoon, I was kidding him about someone hitting a truck, and he has the only truck of that description on the road and Maggio denied it, . . . and afterward admitted it after I showed him the dent in the rear wheel. . . . I asked him why he did not take the dent out and he said it couldn't blow the tire out anyway, . . . he said a woman was driv-

ing the car out in the middle of the road and 'I wasn't going to drive my car out in the sand for anyone.' . . . We were looking at the marks, . . . It was the flange on the demountable rim holding the tire that was dented some four or five inches long, bent down until you could look where it had hit on the rim, the outside projected out, and it bent it down, and you could see the grip holding to his tube in under; it was bent down some five or six inches long.'' This witness also averred that the defendant at that time said, '' 'Do you think they will do anything to me?' and I said, 'they sure will'; and Mrs. Maggio said, 'What would you do now about it?' and I said, 'If I was doing it I would take it up with the tourist now'; he didn't know who he hit or anything about it, and Mr. Maggio told me then, he wasn't driving the car, that he was breaking in a new driver.'' It is significant that although appellant denied, as a witness in his own behalf, that he was operating the truck on the morning of August 22, 1927, he was not asked upon the stand, and did not testify under oath that he had no accident, or that he did not have the conversations above quoted. We think the evidence in support of the charge was ample, and that the jury were warranted in returning the verdict upon which the judgment is based.

It is insisted by appellant that the evidence was insufficient to show that Maggio at any time had or assumed authority over the truck or its driver. Various witnesses testified that he had supervision of the Yuma district, and of the truck when it delivered in that vicinity, and frequently drove it himself. It affirmatively appears that appellant accompanied Pecararo for the sole purpose of directing him to places of business of customers of the corporation, and the route traveled upon this occasion was the usual course over which its truck was driven for like purposes at least three times each week. Further, Pecararo had never before been over the road in question, nor had he made any previous trip across the desert. We think the jury were justified in believing, as they doubtless did, that Pecararo operated the truck as and where directed by the defendant. Appellant's statement, referred to above, that ''he was breaking in a new driver,'' is alone very significant. Authorities cited by appellant involving merely the rule as to imputation of negligence of drivers to their passengers or

guests, do not apply to the instant case. This is obvious from the following cases which also are cited by appellant: *People* v. *Fodera,* 33 Cal. App. 8, 14 [164 Pac. 22], in holding the Motor Vehicle Act (Stats. 1915, p. 397), constitutional, states in effect that the application of the act is not limited to persons who knowingly cause their vehicles to collide with those occupied by others, but requires that they stop and render aid to those who may possibly have suffered injury. In *People* v. *Kaufman,* 49 Cal. App. 570 [193 Pac. 953], it was said: "It was designed to prohibit, under pain of severe punishment, negligent or wanton drivers of motor cars from seeking to evade civil or criminal prosecution by escape before their identity could be established and similarly to prohibit all drivers, whether negligent or not, from leaving persons injured in collisions with cars driven by them, in distress and danger for want of proper medical or surgical treatment." ▮ The statute expressly provides that any motor vehicle which strikes another must stop, and embraces with the driver of such vehicle persons occupying the same "who have or assume authority over such driver." Hence it is apparent that appellant, whether negligent or not, having control over the driver and knowing that a collision had occurred and having failed to cause the automobile to stop, and to render aid to those who might possibly have been injured, was criminally liable under the provisions of section 367c of the Penal Code. We think the evidence was sufficient in this respect to support the verdict and judgment.

▮ Nor was it prejudicial error for the trial court to omit from its instructions to the jury section 20 of the Penal Code. That section requires that in every crime or public offense there must exist a joint operation of act and intent, or criminal negligence. Such an instruction was not requested, and no error was committed by its omission. Moreover, the only intent which need be proved is that involved in the knowledge of the facts requiring that the vehicle stop and that aid be rendered as provided by section 367c.

▮ Appellant next contends that the trial court erred to his prejudice in refusing to instruct the jury that, the prosecution having fixed August 23, 1923, and the defendant having set up an "alibi," it was the duty of the People to

prove beyond a reasonable doubt that the defendant was there at the time, and was in supervision of the truck, and that no other time should be considered.

The court instructed the jury that the defense in this case was what is known as an "alibi," and that if after a full and fair consideration of all the facts and circumstances in evidence they entertained a reasonable doubt as to whether or not the defendant was present at the time and place of the commission of the offense charged in the information, if such offense was committed, it would be their duty to acquit him; and the jury were also told in part that if they believed beyond a reasonable doubt that the defendant then and there had or assumed authority over said vehicle (therein reviewing the evidence, and defining reasonable doubt), that the defendant would be guilty as charged in the information. All of the substantial positive evidence tended to show that the collision did occur on August 22, 1927, and that it could not have occurred on the 23d. We have carefully reviewed the testimony of the witnesses, and the documentary evidence, from all of which we are convinced that an instruction confining the consideration of the jury to August 23d would have been misleading. We think it was not error to tell them that the exact date as charged was immaterial, and that "on or about August 23d, 1927, the time alleged in the information, would be sufficient as to the time thereof, but you cannot convict at all except for specific acts charged in the information, as committed on or about August 23d, 1927."

The refusal of the trial court to give five of the instructions offered by the defendant is also assigned as error. These instructions were refused upon the ground, as noted by the court, that each was "covered by other instructions given." We think it unnecessary to quote them. One such proposed instruction pertaining to the date of the offense would have been misleading, as we have already observed. In the light of the evidence as we view it, the others were properly covered, though couched in different language.

 Finally, it is contended that certain of the jurors were guilty of misconduct warranting the setting aside of their verdict, in that they were informed through a newspaper of certain facts concerning the collision, and that

members of the jury discussed the credibility of certain witnesses in the case before it was submitted to them for deliberation. An affidavit of the publisher of the newspaper recites that the jurors mentioned by appellant were on the subscribers' list and received their paper each evening, but there is no attempt to show that either of the jurors read of the incident. The discussion of witnesses by jurors appears by four affidavits filed on behalf of the defendant herein upon motion for new trial to have occurred on the court-house steps during the trial, but before the court had convened. It appears therefrom that Pecararo, the driver of the truck, had theretofore been tried for the offense here charged, and that the witnesses in the instant case had appeared and testified in *People* v. *Pecararo;* that between ten and twenty of the whole venire were present at the time the conversations are alleged to have taken place, and that one juror, who participated in the trial of the case at bar, remarked that "they get up there and lie, and lie, and lie, and it shouldn't be permitted." ■ The affidavit of juror Williams, one of the twelve jurors who rendered the verdict in the present case, is included in the record, but since it is a familiar rule that jurors are not permitted to impeach their own verdict, this affidavit must be disregarded upon that ground. (*People* v. *Wong Loung,* 159 Cal. 520 [114 Pac. 829] ; *People* v. *Holmes,* 118 Cal. 444 [50 Pac. 675].) The remark quoted appears in the affidavit of one of appellant's counsel, who also avers that "he did not at said time, nor does he now, know what matter the said jurors were discussing." The remaining affidavits deal in generalities, and it does not appear therefrom that any improper statement was made concerning the pending case or that a juror of the panel participated in the discussion. ■ Certain testimony of another juror, A. R. Tagg, is mentioned in the briefs, but it does not appear in the record on appeal, and hence cannot be considered. There is no merit to this point. ■ Besides, the question of misconduct having been submitted to the trial court upon motion for new trial, it was addressed to the sound legal discretion of that tribunal, and an appellate court will not disturb an order denying such a motion unless there is manifestly a clear and unmistakable abuse of discretion. (*Peo-*

*ple* v. *Canfield*, 173 Cal. 309 [159 Pac. 1046].) We do not think the record presents a ground for reversal in this instance.

The judgment and order denying motion for new trial are affirmed.

Works, P. J., and Thompson, J., concurred.