[Crim. No. 1546. First Appellate District, Division Two.—September 19, 1929.]

THE PEOPLE, Respondent, v. FRANCIS STEELE et al., Appellants.

Frank M. Carr, Richard Liebman and Jos. P. Lacey, for Appellants.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General for Respondent.

NOURSE, J.—The two defendants were jointly tried on an information charging manslaughter and a violation of section 141 of the Motor Vehicle Act (Stats. 1923, p. 562). The defendant Steele was convicted on both charges; the defendant Kearney was convicted on the latter charge, and, pursuant to an instruction of the trial court, was acquitted on the charge of manslaughter. Both defendants appealed from the judgments following the verdict and from the orders denying their motions for a new trial, but the defendant Steele has abandoned his appeal and the judgment and order as to him are affirmed without opinion.

The facts of the case as presented on the Kearney appeal are simple and without material dispute. Kearney and Steele, with two others, Roper and Graham, were out on a drinking "party" during which all but Graham had several

drinks of gin and whisky. At Roper's home, where more drinks were served to the three mentioned, the four men got into an automobile owned by Kearney's employer, but over which Kearney had control. This was a Buick roadster having what is called a "rumble seat." Steele took the wheel, with Kearney sitting beside him. Graham and Roper rode in the rumble seat. While traveling down Central Avenue in the city of Alameda, at an unlawful rate of speed, the machine struck a pedestrian, named Anne Murphy, at the intersection of Central Avenue and Everett Street, hurling her through the air about three feet from the ground and causing her to roll some ten feet after hitting the ground. As a result of these injuries Mrs. Murphy died. The driver slowed momentarily and then sped away without rendering any aid to the victim of the collision. About four blocks from the point of collision, after turning two corners, Steele brought the car to a stop and exchanged seats with Kearney, who then drove the car out of the city of Alameda and into the city of Oakland, where the four men were apprehended about an hour later. Eye-witnesses testified to the high rate of speed at which the car was traveling at the time of the collision and to the terrific sound of the impact of the machine with the body of the deceased. One witness testified that he was walking down Central Avenue and heard the noise of the automobile coming behind; that with the noise of the crash he turned and saw the deceased flying through the air; that the speed of the machine was slackened and he heard someone in the car urge the driver to flee; that the gears were then shifted and the car sped away without stopping until it had turned a corner and was four blocks from the point of collision. This testimony was corroborated by that of the witness Graham, who testified that, immediately after the collision, he heard a conversation between Steele and Kearney in which the former said, "if I don't stop I will be a hit-and-run driver." The same witness testified that neither he nor Roper had said anything to Steele at the time, but that both he and Roper had had their heads down to avoid the wind and had not seen the body struck by the machine.

The main point raised by the appellant Kearney on this appeal is that the evidence is not sufficient to support this theory of the state's case. The witness Higgins testified

that he ran after the defendant's car, called upon the driver to stop, but that someone in the car urged the driver to keep on going. He also testified that immediately after striking the body the car was momentarily slowed down and that all four occupants turned around and looked back without getting up out of their seats. The witness Graham testified that he heard a *conversation* between Kearney and Steele in which Steele said to Kearney, "If I don't stop I will be a hit-and-run driver." This same witness testified that he had said nothing to Steele at this time and that as to Roper, who sat beside him in the rumble seat, the witness did not know whether or not he had said anything to Steele. Later on in his testimony this witness, in answer to the direct question whether Roper had said anything to either of the defendants at the time of the collision, he answered, "I don't recall him saying anything—no." Upon cross-examination of this same witness he was asked if he had heard the defendant Kearney say anything to Steele or anyone else in the car, and he answered, "I did not hear him say anything until after the bump—there was some *conversation* in the front seat but I could not tell you what he said. Q. Did you hear him talking or hear Steele talking? A. I heard Steele talking. Q. You did not hear this defendant Kearney say anything, isn't that a fact, Mr. Graham? A. It was, as I said before, some conversation in the front seat. Q. You heard Steele make some remark to Kearney, if he did not stop he would be a hit-and-run driver? A. Words to that effect— Q. You did not hear the defendant Kearney say anything in *response* to that? A. No, sir." Later on in the course of his testimony the court addressed this witness as follows: "I don't understand your testimony. I don't know whether you said you heard Kearney's voice after you felt the bump or not. A. Are you asking me? Q. Yes. A. Why, of course, you understand— Q. I am just asking you the question, did you hear Kearney's voice after you felt the bump, before the machine came to a stop? A. I said there was a conversation going on in the front seat. Q. Between whom? A. Kearney and Steele. They were sitting there. Q. As I understand, at no time did you understand what Kearney said? A. No, I did not. Q. You could not distinguish what he said? A. No, sir."

The only apparent conflict in this evidence is in the testimony of Kearney to the effect that he was asleep at the time and did not witness the collision or feel the impact and he did not awaken until the car was stopped four blocks later and Steele called to him to take the wheel.

It is the theory of the respondent that, having proved that Kearney and Steele alone occupied the front seat and that some one of the passengers had urged Steele to continue on, the testimony of the witness Graham that he overheard the conversation between Steele and Kearney was sufficient to show that Kearney was the one who urged Steele to flee. From our view of the evidence we are satisfied that it is sufficient to support this theory and to sustain the verdict. It is immaterial that the witness Graham did not distinguish or understand what Kearney said to Steele. His testimony as to overhearing the conversation between Kearney and Steele, that he himself had said nothing to Steele, and that he did not recall Roper having said anything to Steele is sufficient to overcome the direct denial of the defendant Kearney based upon his statement that he was asleep at the time, particularly as this testimony was directly rebutted by the witness Higgins, who testified that immediately after the impact he saw all four occupants of the car turn around and look back where the body was lying upon the street. All the circumstances found in the evidence pointed unmistakably to Kearney as the one who urged Steele to flee immediately after the collision and these circumstances as well negatived the possibility that anyone else had done so notwithstanding the direct denial, and we must conclude from its verdict that the jury found that the appellant was the one who urged Steele to flee. Thus Kearney, having control of the car which Steele was merely driving with his permission, becomes equally guilty with Steele of a violation of the section of the Motor Vehicle Act within the rule of *People* v. *Maggio,* 90 Cal. App. 683 [266 Pac. 813], a case arising under section 367c of the Penal Code, which contains provisions similar to those of section 141 of the Motor Vehicle Act.

But the case against this appellant does not depend upon this theory alone. The conceded fact is that after the car had proceeded four blocks, which was a matter of seconds in time, this appellant took the wheel and speeded,

at a rate faster than Steele had driven, in a direction away from the victim of the collision. By so doing the appellant became a principal in the violation of the section, as will hereafter appear.

The argument is made by this appellant that as section 141 of the Motor Vehicle Act requires the *driver* of a car to stop *immediately* and render aid, this appellant cannot be held as a principal or as an accessory before the fact under the evidence recited. This section (Stats. 1923, p. 562) reads in part as follows: "The driver of any vehicle which strikes any person . . . shall immediately stop and give his name and address and the names and addresses of all passengers . . . and shall also render to such persons all necessary assistance, including the carrying of such persons to a physician or surgeon for medical or surgical treatment, if such treatment is required."

It will be seen that the section requires five separate acts on the part of the driver of a car in collision with a person, a failure to perform any one of which is punishable as a separate offense. (*People* v. *Scofield*, 203 Cal. 703 [265 Pac. 914].) Though the section requires the driver to stop immediately, no time is fixed within which he must render aid or carry the person injured to medical treatment if this is necessary. This is manifest from an analysis of the section. It reads that the driver "shall *immediately* stop and give his name . . . and shall *also* render to such persons all necessary assistance." By no process of interpretation can the word "immediately" be construed as limiting or modifying the word "render" appearing in the latter clause of the section. To so hold would make the section ridiculous and unenforceable. Collisions such as render the section applicable usually occur when the driver is going at a high rate of speed and the victim of the collision is often rendered unconscious or injured in such a way that the assistance required could not be given immediately. The clear purpose of the section is to "prohibit, under pain of severe punishment, negligent or wanton drivers of motor cars from seeking to evade civil or criminal prosecution by escape before their identity could be established, and similarly to prohibit all drivers, whether negligent or not, from leaving persons injured in collisions with cars driven by them in distress and danger for want of proper medical or surgical

treatment.'' (*People* v. *Kaufman,* 49 Cal. App. 570, 573 [193 Pac. 953, 955].) In *People* v. *Scofield,* 203 Cal. 703, [265 Pac. 914], the Supreme Court had occasion to comment on the provisions of this section of the Vehicle Act, pointing out that it required a reasonable interpretation and did not require the driver to do an impossible or useless thing. That case involved a collision between two cars in which the drivers of both were rendered unconscious. Scofield was tried upon a charge of having failed to give his name and address or to render assistance to the driver of the other car. The Supreme Court pointed out that the statute cannot be literally applied in all cases of collision or accident, but that the driver is required to stop and give his name, if possible to do so, and to render such assistance as is necessary under the circumstances.

■ Thus, it is conceivable that a vehicle might be traveling at such a high rate of speed that it could not be stopped immediately after the collision, or that the highway is in such condition that the driver would be compelled to move on to a safe stopping place. Certainly it could not be argued that, because he is excused from stopping immediately, he is not required to perform any of the other acts specified in the section, because no one of them could have been performed *immediately* upon the collision. Then, again, the victim of the collision may have been pinned under his machine or thrown down an embankment so that it would have been impossible for the driver to give his name *immediately* or to have conveyed him to a place for medical treatment immediately, but he certainly would not be excused from rendering such necessary assistance as soon as it was possible or practicable to do so. Whatever may be required under the circumstances must therefore necessarily be a question of fact to be determined by the jury, and we cannot say as a matter of law that the failure to stop within four blocks or four feet is in all cases a violation of the section. ■ Here the car having been stopped four blocks distant and this appellant having then taken the wheel it was· a question of fact for the jury to determine whether there was still sufficient time to return to the point of collision and render the assistance necessary under the requirements of the statute. Thus it was for the jury to determine whether when this appellant took the wheel when the car was stopped he

knew that a person had been struck within the meaning of the statute and whether, in driving away from the place of the collision, the appellant was guilty of aiding and abetting Steele in the *commission* of the offense, because at the time Kearney took the wheel the opportunity was still present with Steele to return and perform the duty required by the statute.

▉ This appellant complains of the instruction which advised the jury that to convict him on this count it was necessary to find, among other things, that he "by words and actions, aided, encouraged or assisted the defendant Steele to drive the vehicle away from the scene of the accident to the city of Oakland *to conceal the identity of said Steele and said vehicle.*" The criticism is based upon the portion of the instruction which we have italicized, the argument being that there was no evidence to warrant it and that it added the element of motive of flight and concealment as essential to make this appellant a principal. As to the evidence, the admitted fact that the car did not stop but sped away at an increased speed and in a circuitous route proved the charge that those in the car were seeking to conceal their identity. ▉ The argument upon the element of motive is really that this added a new and separate offense—the aiding of a criminal to escape *after* the commission of a crime—so that if the jury believed that Kearney was an accessory after the fact it could have found him guilty of the crime charged in the information. But this is really a false issue raised for the first time on this appeal. During the trial before the jury there was no suggestion that the appellant Kearney might be guilty of the separate offense as an accessory after the crime in aiding Steele to escape arrest for the crime he had committed. The theory of the state was that at the very time of the crime Kearney aided and abetted Steele in the commission of it. In an ordinary case the portion of the instruction complained of might be interpreted as including any act after the crime aiding the criminal to escape arrest; but here the gist of the offense charged is "the failure to immediately stop, but instead to wilfully drive the vehicle away from the scene of the accident to conceal the. identity of the driver," as the trial judge had correctly instructed the jury in the instruction immediately preceding the one complained of. We cannot

perceive how the jury could have been misled by the language of these instructions. It was the purpose of the trial judge to advise the jury, in line with the decisions heretofore cited, that the section of the Vehicle Act required more than the mere stopping of the vehicle, that its purpose was to prevent drivers of motor vehicles "from seeking to evade civil or criminal prosecution by escape before their identity could be established." (*People* v. *Kaufman, supra.*) There is a clear distinction between an escape to prevent apprehension for a crime already committed and an escape to conceal one's identity which is itself the commission of the crime denounced by the statute. It was the latter situation which the trial judge submitted to the jury and we find no error in the instructions.

 The next point concerns the attempt to impeach the witness Graham, but as the whole argument is predicated upon matters outside the record it does not require consideration.

 Finally, it is claimed that the district attorney was guilty of misconduct in his cross-examination of certain witnesses and in his argument to the jury. In the cross-examination of the character witnesses called by this appellant they were asked if they had heard that this appellant had run over a child in San Jose or a man in Alameda, or had frequently been charged with violations of traffic regulations. The questions were objected to and assigned as misconduct. The district attorney was then challenged to prove the facts embodied in the questions and, to meet the charge of bad faith, attempted to do so, but was stopped on objection of this appellant. Thereafter this appellant was called to the stand and, in answer to questions propounded by his counsel, denied that he had run over any person in San Jose. No questions were asked as to the other occurrences referred to by the district attorney. The rule is that a character witness may be cross-examined as to his knowledge of reports of particular and specific charges of acts inconsistent with the character which he is called on to prove. (*People* v. *Fodera*, 33 Cal. App. 8, 11 [164 Pac. 22]; *People* v. *Hightower*, 65 Cal. App. 331, 340 [224 Pac. 110]; *People* v. *Sieber*, 201 Cal. 341, 349 [257 Pac. 64]; *People* v. *Smith, ante*, p. 344 [279 Pac. 1022].) Such method of examination is always to be viewed with caution because of the

prejudice which might result to the defendant where the district attorney is not acting in good faith, but here the good faith of the district attorney is questioned only in the arguments of counsel, and, in absence of any showing in the record, we must hold that the questions were within the proper bounds of cross-examination.

The judgments and orders denying a new trial as to both defendants are affirmed.

Sturtevant, J., and Koford, P. J., concurred.