[Crim. No. 1178.    Third Appellate District.—December 23, 1931.]

THE  PEOPLE,  Respondent,  v.  GAETANO  RALLO, Appellant.

David E. Peckinpah and Joseph Barcroft for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON (R. L.), J.—The defendant was convicted of a violation of section 141 of the California Vehicle Act (Stats. 1929, p. 544, sec. 62), consisting of a failure to render aid to a pedestrian who was struck by his automobile and killed. The defendant was jointly charged and tried with one Jack Gallo who was driving the machine at the time of the accident. The machine was owned by the appellant. He sat by the driver's side at the time of the accident, but claimed to have been asleep. The driver was acquitted while the owner of the machine was convicted.

The appellant contends that the evidence fails to support the judgment of conviction; that the owner of the machine was a mere accessory to the alleged offense and could not be lawfully convicted thereof since the principal was acquitted, and that the court erred in giving and refusing certain instructions.

About 4 o'clock on the morning of May 25, 1931, the appellant and an associate by the name of Gallo were driving a Ford automobile southerly along the Golden State highway between Madera and Fresno. The machine was owned by the appellant. It was being driven by Gallo. The appellant sat by the driver's side and claims to have been asleep when the accident occurred. The head-lamps were lighted. It had been raining during the night. Suddenly the machine struck an object at the edge of the roadway which proved to be a pedestrian by the name of Gust Johnson. He was apparently instantly killed. The body was discovered by a truckman that morning huddled against a slight embankment at the outer edge of the right of way some fifteen feet from the paved portion of the highway. His right leg was fractured below the knee and the bone protruded through the flesh. The left leg was broken at the hip. His arm, his back and his neck were also broken. Both occupants of the machine declared they did not know they had hit or killed a man. He was struck with such force, however, that the bumper was broken and the right head-lamp was damaged. The driver said, "All I see, that bump, and jump right over it." The machine left the paved highway and shoved the body of Johnson across a shallow depression adjoining the roadway a distance of

about thirty-five feet before it became dislodged. The soil by the roadside over which the machine traveled was so soft that the tires left a trail several inches in depth. After the body was dislodged the machine was pulled back to the pavement a further distance of about thirty feet. A portion of the broken bumper left a gouged line in the surface of the concrete. When they reached the pavement again the dragging bumper impeded their progress so they were required to stop. Both men got out of the vehicle. The driver then claims to have said: "We hit an automobile . . . or something, . . . let's go back. . . . Rallo, let's go back. . . . It is a bad thing if we kill somebody, and if somebody is under there." The driver further asserted that the appellant replied, "No, let's go. . . . I am covered with insurance." The driver, however, claims to have walked back along the side of the roadway a distance of nearly a mile looking for the truck which he said he thought they had struck. In the meantime the appellant detached the broken bumper and placed it in the machine. He then turned the machine around and soon met Gallo returning from his trip down the roadway. They immediately proceeded to Fresno. The machine was left in a garage for repairs. No one, was informed of the accident.

In the early morning the driver of a passing vehicle discovered the body of Johnson at the point where it had fallen and promptly notified the sheriff's office. An investigation followed. The scene of the accident was visited. The trail of the machine was readily traced from the point where it left the paved portion of the highway to the place where the body lay, and thence back to the pavement, which was a total distance of sixty-seven feet. Half a bottle of gin was found just over the fence near by. The bottle contained the finger-prints of the appellant. The machine was subsequently discovered in the garage and examined. The sheriff testified that he observed the broken bumper and headlight. He further said, "I found . . . mud, grass and hair, and things I made my examination for." Both defendants were subsequently arrested and made contradictory statements which were offered in evidence at the trial.

There is no merit in the appellant's contention that he is a mere accessory to the offense with which he was

charged, and that he may not be lawfully convicted since Gallo, the driver of the automobile, was acquitted. The appellant is the owner of the machine. Its operation, at the time of the accident, was under his direct control. Both men were jointly charged as principals in the commission of the offense. They were not charged with homicide. They were charged with violating the provisions of section 141 of the California Vehicle Act in failing to render assistance to a pedestrian who had been struck and injured by their machine. The gist of this offense is not the unfortunate injury or death of the victim. It is the wilful failure to render reasonable assistance. The purpose of this statute is to deter the perpetrator of the casualty from fleeing from the scene of the accident and concealing his identity so as to escape responsibility therefor, and to prevent the victim from being left to suffer or die without timely aid. It is true that section 141, *supra,* provides in part:

"The *driver* of any vehicle involved in any accident resulting in injury or death to any person . . . shall render to any person injured in such accident reasonable assistance, including the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or such carrying is requested by the injured person."

Evidently the legislature intended by this language to prescribe a penalty against the owner of a machine who occupies the vehicle and has the control over its operation at the time of the accident, and who wilfully omits to render reasonable assistance to the injured party, as well as the actual driver thereof. Any other construction of the language would seem to be unreasonable because the owner of the vehicle who has the legal right to control the operation thereof may actually discourage or prevent the driver from rendering the aid which he might be willing or anxious to perform. We are therefore of the opinion that the owner of a machine who is riding therein having the control of its operation at the time of an accident may be deemed to be the driver thereof, for the purposes of this section, even though another person may be actually seated at the steering-wheel. (*People* v. *Steele,* 100 Cal. App. 639, 644 [280 Pac. 999, 1001].) In the case last cited the facts

were quite similar to those of the present action. In that cause the owner and the driver of a machine were also jointly charged with a violation of the provisions of section 141 of the California Vehicle Act (Stats. 1923, p. 562). Kearney, who was one of the occupants of the machine, had the control thereof, although Steele was driving it at the time of the accident. The vehicle was owned by Kearney's employer. Both Steele and Kearney were convicted. On appeal, it was contended that section 141, *supra*, applied only to the person actually engaged in driving the machine. The court said: "Kearney, having control of the car which Steele was merely driving with his permission, becomes equally guilty with Steele of a violation of the Motor Vehicle Act."

■ The judgment of conviction in the present case seems to be sufficiently supported by the evidence. The vital question is whether there is substantial evidence upon which the jury was warranted in finding that the appellant wilfully failed to render aid to the injured man. For the purpose of determining this question it may be conceded that if, in good faith, he did not possess reasonable cause to believe they had struck and injured a man, he would not be guilty of violating the statute in driving away without rendering or offering to render aid. If, upon the contrary, there is substantial evidence upon which the jury was warranted in finding the appellant knew, or as a reasonable man, should have known they had struck and injured a man, and deliberately left without rendering him aid, then this judgment should be affirmed. We think the record of this case amply supports the assumption that they both knew, or should have known their machine struck and injured a human being.

It must be conceded the appellant denied that he ever had any such knowledge. It must also be acknowledged that the driver of the vehicle also repeatedly said he thought they must have struck a truck. The jury had a right to doubt these statements. The conduct and admissions of Gallo, the driver, indicate that he believed they had struck and injured a man. He clearly indicates this belief from his statements which were made to the appellant at the time of the accident. Gallo did make contradictory statements regarding this matter. But the jury had a right to

accept his admissions together with the surrounding circumstances in support of their theory that he believed he had struck and injured a man. So far as the appellant is concerned, the jury had a right to disregard his evidence entirely, for he was successfully impeached. First, because there is uncontradicted evidence that he had been previously convicted of a felony. Second, because the jury was warranted in assuming his conduct at the time of the accident refutes his denial that he had any such knowledge or belief.

Assuming that the appellant was asleep just before the accident occurred, he awoke immediately at the terrific blow which broke the bumper and damaged the headlight when the man was struck, and he then seized the steering-wheel. Mr. Gallo said regarding this matter: "I turn my car to the right, and I steer the car right out into the side, and in the meantime Mr. Rallo grabbed the wheel, and we pretty near missed a telephone pole." It seems improbable that this man was struck with such force as to do the damage which resulted therefrom and that his body was dragged a distance of thirty-five feet and that the occupants of the machine knew nothing of the cause. Moreover a gin bottle containing the finger-prints of the appellant was found not far from the place where the body lay. It will be recalled the machine returned to the pavement some thirty feet beyond the place where the body was left and that this is where the broken bumper caused them to get out of the vehicle. Gallo must have had a conviction that they had struck a man, for he then said to the appellant, "It is a bad thing if we kill somebody." He also added, "Let's go look good, let's go back." To this request the appellant replied, "Let's go (on to Fresno), because I am covered with full insurance in accident." In his statement to the sheriff in the presence of the appellant, Gallo said, "I don't know if I kill somebody or not, . . . I drive the machine and I don't know whether I kill somebody or not, but he (Rallo) don't want to come back." In this statement in the presence of the sheriff and Rallo the driver of the machine further said, " 'It is a shame,' I told you (Rallo). . . . 'Somebody die there.' . . . You (Rallo) said, 'I am covered with insurance.' " It was light enough for them to see the telephone pole near

which the body was left. Gallo said in this regard, "I says, I think I hit something, . . . I jump right off (the pavement), I was going for a telephone post, and I remember we been right up to that telephone post, and I tried to straighten it right out from that telephone post." In spite of the difficulty encountered while the body was being dragged through the soft ground to the margin of the right of way, it appears they made no effort to look in that vicinity for the injured man. The following examination of Gallo confirms this conclusion: "Did you follow these tracks back to that telephone post? A. No, I go a little ways, and it was muddy there and slippery, all the way, lots of water in (the depression), and I never follow back, I go, kind of follow the highway." After reaching home, Gallo admits that he could not sleep because he was worrying over the affair. He procured a newspaper the following morning, which contained a story of the discovery of the body of Johnson. He called the appellant's attention to this newspaper item. They evidently realized their accident was the cause of his death. Yet the appellant warned Gallo to tell no one about it. No effort was made on the part of either of them to tell the authorities of their participation in the affair. While the statement was repeatedly made to the effect that they thought they had struck a truck, the good faith of these parties in making this statement may reasonably be doubted. Mr. Francisco, who repaired the automobile after the accident occurred, said that Rallo told him the damage was caused by striking the limb of a tree. He said, "Did he state how it was caused? A. He said that it was a very wet morning, . . . he hit a limb of a tree, or something that fell across the road."

The circumstances of this case furnish sufficient evidence upon which the jury was warranted in believing the appellant knew, or should have known, they had injured or killed a man, and that he wilfully failed to make any effort to render assistance to the victim of the accident. The judgment is therefore adequately supported by the evidence.

It is claimed there is a fatal variance between the degree of assistance which is required of a driver of an automobile by the provisions of section 141, *supra*, in the event of an injury to another person, and the omission of

which the appellant was found guilty. Section 141 of the California Vehicle Act requires one to render only ''reasonable assistance''. The jury found the appellant in the present case guilty of failure to render ''all necessary assistance''. This variance occurred by adhering to the language of section 367c of the Penal Code. The last-mentioned section requires a driver to render ''all necessary assistance'' to the injured party. It is argued that the phrase ''all necessary assistance'' is more comprehensive than mere reasonable assistance, and exceeds the requirements of the statute as it exists in the California Vehicle Act. It is unnecessary to attempt to distinguish between the nature of the acts which may be required under the terms of these two statutes, for the reason that the evidence is undisputed that no assistance whatever was rendered. The appellant may not complain of having been convicted of failing to render all necessary assistance rather than mere reasonable assistance, when the record shows that he rendered no assistance at all. The objection to this inadvertence with reference to the degree of assistance which is required by the statute is therefore without merit.

The giving of the following instruction constitutes reversible error, to wit: ''The duty imposed upon the driver of an automobile, who strikes a person, to stop and render assistance required by the law, is a duty which he must perform *in all cases*, and it is immaterial whether such accident was caused by the carelessness of the person struck, or of both, or was an unavoidable accident. Such duty arises whenever such a collision occurs, regardless of whether the person struck was killed or only injured.''

This instruction is fatally defective. It omits the essential element of knowledge on the part of the accused of the infliction of injury upon another person. One may not be deemed to be criminally guilty of failing to render aid to an injured person when he is ignorant of the fact that injury has been inflicted. The gist of this offense is the wilful omission to render reasonable assistance to one who has been injured. Upon the contrary, the jury was instructed in the present case, without reservation, that the driver of an automobile, who has injured another person, must stop and render assistance *in all cases* of accident. Apparently this is not the law.

In the case of *People* v. *Scofield*, 203 Cal. 703 [265 Pac. 914, 916], the defendant was convicted under section 141 of the California Vehicle Act, of failure to render assistance to the victim of an automobile accident. The facts of that case show that the injured person was rendered unconscious as the result of a collision. The defendant did stop his machine, but failed to give the injured person the statement required by the statute because the victim, being unconscious, was unable to receive the information. He did not render assistance because other bystanders were assisting in caring for him. There was no opportunity for the defendant to assist. The judgment was reversed in that case. An instruction which was similar to the one which is here involved was condemned. The court said:

"It is obvious that criminal liability should not attach in all cases where a literal application of the language of the statute might be made. . . . The defendant takes exception to the following instruction which was given by the court: 'The duty imposed upon a driver of an automobile which collides with another vehicle to stop, render assistance and furnish the information required by the law, is a duty which he must perform *in all cases.*' It is insisted that the phrase 'in all cases' is too broad. We think the criticism well taken, as the facts before us in the present case illustrate. This instruction has been under review before, and it has been stated that while the instruction is no broader than the section itself, it is inconceivable that the legislature intended to make the provision of the section applicable, for instance, to a person who was ignorant of the fact that the automobile which he was driving had struck another person. (*People* v. *Graves*, 74 Cal. App. 415, [240 Pac. 1019].)"

The foregoing illustration which was used by the Supreme Court fits the present case exactly. The instruction is fatally defective.

A refusal to give the following instruction which was offered by the appellant was also erroneous: "You are instructed that the defendant, Gaetano Rallo, is charged in the second count of the information with a violation of section 141 of the California Vehicle Act, which has been heretofore read to you. If you find from the evidence that at the time of the accident, the defendant, Gaetano Rallo,

was not the driver of the vehicle involved in said accident, but at the time of said accident was asleep in said automobile as a passenger, and that when he awakened, he was advised by the driver of the automobile and he believed that the automobile had collided with another vehicle which had not stopped and defendant Gaetano Rallo was not aware that a human being had been struck, then it is your duty to bring in a verdict finding the defendant Gaetano Rallo not guilty of the charge set forth in the second count of the information.''

This instruction contains a clear statement to the effect that the defendant could not be lawfully convicted of failing to render assistance if he had no knowledge of the striking or injury of Johnson, and upon the contrary believed their machine had merely hit a truck which had not even stopped. This is a correct statement of the law. It is based upon the defendant's theory of the case. There is substantial evidence to support this theory. It is not covered by any other instruction. The appellant was entitled to have this theory of his defense presented to the jury. A refusal to give this instruction was therefore erroneous.

In view of the application of the rules of law heretofore announced, it becomes unnecessary to further comment on other challenged instructions.

Since there is a serious conflict of evidence regarding the knowledge of the appellant of the injury of Johnson, we are unable to positively say his conviction did not result in a miscarriage of justice. This question should be determined by the jury. We may therefore not affirm this judgment under the provisions of article VI, section $4\frac{1}{2}$, of the Constitution.

The judgment is reversed and the cause remanded for a new trial.

Preston, P. J., and Plummer, J., concurred.