[Crim. No. 812. Fourth Dist. Mar. 1, 1950.]

THE PEOPLE, Respondent, v. AMOS MOODY GREEN et al., Appellants.

Nathaniel O. Bradley and J. M. Lopes for Appellants.

Fred N. Howser, Attorney General, and Donald D. Stoker, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendants were charged in the third count of an information with a violation of section 480 of the Vehicle Code. The charge, in substance, was that the defendants, being drivers of an automobile which was involved in an accident and which had resulted in an injury to the complaining wit-

ness, Dewey L. Dehart, did wilfully, unlawfully and feloniously fail and omit to immediately stop such vehicle and give their names, addresses, operators' or chauffeurs' licenses to the person injured and render him reasonable assistance.

Defendants were charged in the first two counts of the information with robbery and violation of section 503 of the Vehicle Code. A jury trial resulted in a verdict of acquittal on the first two counts and guilty as to the third. Defendant Amos Moody Green was also charged with a prior conviction of burglary and entered a plea of guilty thereto. Motions to set aside the verdict and for new trial were made and denied and defendants appealed.

All defendants contend that the verdict rendered by the jury is not supported by the evidence; that it is contrary to law; and that the court erred in instructing the jury. Defendant Green also contends that the deputy district attorney who prosecuted the case was guilty of prejudicial misconduct by introducing evidence of defendant's prior record when he had admitted the prior conviction alleged.

On June 12, 1949, Mr. Dehart, the complaining witness, went to the White Front Café in Tulare at about 9:30 o'clock p. m. He played draw poker in the back room of the café until midnight and during that time had several drinks of straight whiskey. After Dehart finished playing cards, he went into another room where Kennelley (who had been the dealer in the card game) was talking to someone at the end of the bar. Dehart offered to buy Kennelley a drink. Kennelley introduced Dehart to the defendants, Mr. and Mrs. Green, and Dehart bought them all several drinks.

Dehart testified that he told the defendants that he had to drive to Porterville and that they could ride with him. Defendant Kennelley testified that Dehart bought a pint of whiskey before leaving the bar and suggested that they go to Visalia to eat and drink. They all left the café, walked about a block, got in Dehart's Ford station wagon, which was parked in front of a service station, and Dehart drove toward Visalia. He stopped at his lumber yard near the junction of Tulare, Lindsay and Visalia highways, about 5 miles north of Tulare. After stopping, Dehart went into the lumberyard for a few minutes, leaving the defendants in the station wagon. When he returned to the car, defendant Kennelley was in the driver's seat and an argument took place as to who would drive. Finally, with Kennelley driving, the car started toward Lind-

say and about a mile east of the lumberyard, Kennelley stopped the car and a fight took place in which Dehart was knocked down several times and finally was put in the rear of the station wagon by the defendants.

Mrs. Barlow, who lived about 105 feet from the place where the station wagon was stopped, testified that she was awakened by the barking of dogs and upon looking out the door, observed the parked station wagon and saw three men struggling; that one of them, "the one that was being knocked down the most," started to run across the road and one of the others started after him; that she then awakened her husband and they saw a man struggling and being put into the station wagon. Mr. Barlow testified that he heard a lady's voice saying "He ought to lie still now, I kicked his damn teeth out."

After the fight, defendant Green got behind the wheel, drove the car back to Tulare and when he was making a right turn in front of the Hotel Tulare at a speed estimated to be between 30-35 miles per hour, Dehart (who had taken hold of the car door handle) went out of the car backwards on the right hand side. Mr. Dailey, a taxi driver who saw Dehart fall out, testified "He came out as if he was trying to jump out, or falling out, or being pushed out. He came out head first in a tumble-way like." Dehart hit the pavement, rolled over, got up, staggered out into the street and waved to Mr. Dailey to stop his taxi. Dehart told Dailey to take him to the police and Dailey then drove to a police car at the Greyhound bus station, where he was directed by the officers to drive to the county hospital.

Mrs. Green testified that while the fight was going on near the Barlow place, she was sitting in the car with her husband and that defendant Kennelley was trying to get Dehart into the car to take him back to town but Dehart would not get in; that Kennelley asked her husband to come and help him, which he did; that she did not get out of the car and Kennelley and Green put Dehart in the back and started back to Tulare, with Mr. Green driving; that she was seated in the middle of the front seat and Kennelley on her right; that on the way back to Tulare, Dehart attempted to jump out of the car and when Kennelley saw him, he got him away from the door and closed it; that when they were in town and just as they turned a corner, Dehart did jump out of the car. When asked what was done thereafter, Mrs. Green stated: "My husband started over toward the curb and Mr. Kennelley said 'he is standing up.' In other words, he had already gotten up, so my husband,

I guess, got scared like all of us did and drove on for two or three blocks and stopped the car and we got out and went to Mr. Kennelley's house and his wife took us home.''

Defendant Kennelley testified that after Dehart had been put in the back of the station wagon, Mr. Green got behind the wheel and they drove back to Tulare; that they were going back into town to leave the car where they had found Dehart and let him go; that on the way back to town, Dehart opened the door and tried to jump out when Kennelley ''grabbed him by the arm and held him and succeeded in closing the door''; that when they were in front of the Hotel Tulare, Dehart deliberately opened the door and jumped out; that Mr. Green slowed down and they looked back and Dehart had rolled and tumbled and got up and started running in the opposite direction, waving his arms; that ''we were somewhat worried about it, but we had been drinking and evidently got a little panicky and Mr. Green drove on for three or four blocks, and we stopped the car and went home.''

Mr. Dehart had no recollection of being put into the car or traveling and did not remember hitting the street but did recall that he managed to get hold of the door handle and give it a little pull ''and out I went backwards.'' The next thing he knew was that he was in the hospital the following morning.

Dehart was admitted to the hospital at 2:17 o'clock a. m. on June 13th and the doctor's examination showed that he had multiple abrasions, bruises and lacerations and that the upper plate of his teeth was broken.

The first contention advanced by the defendants is that the evidence is not sufficient to support the verdicts returned by the jury. At the outset, it may be observed that both defendant Kennelley and Mrs. Green testified at the trial that at the time of the accident the car was being driven by the defendant Green; that he failed to stop, and in his statement made to the officers, Green admitted that to be the fact. There is then no question as to the sufficiency of the evidence to sustain the finding of the jury that defendant Green was guilty of the crime charged, unless it can be said, as contended by the defendants, that an ''accident'' did not occur within the purview of section 480 of the Vehicle Code. That section provides, among other things, that the driver of any vehicle involved in an accident resulting in injury or death to any person shall immediately stop such vehicle at

the scene of such accident and shall fulfill the requirements of section 482(a) of the same code. Section 482(a) provides, among other things, that the driver of any vehicle involved in an accident resulting in injury to or the death of any person shall also give his name, address, the registration number of the vehicle he is driving, the name of the owner . . . and shall render to any person injured in such accident reasonable assistance, including the carrying or the making arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person.

The purpose of the "hit and run" statute is to prevent the driver of an automobile from leaving the scene of an accident in which he participates or is involved without proper identification and to compel necessary assistance to those who have been injured. (*People* v. *Scofield,* 203 Cal. 703, 707, 708 [265 P. 914].)

In *People* v. *Kinney,* 28 Cal.App.2d 232 [82 P.2d 203], it was contended that the statute referring to section 482 of the Vehicle Code does not require the driver of an automobile who is involved in a casualty other than a collision or the striking of a pedestrian to render assistance to a person who is injured while riding in his machine as a guest and the court held such a construction could not be placed upon the statute in question. It was there held, at page 238, that

"The driver of any vehicle involved in an accident [of any sort] resulting in injury to or death of any person . . . shall render to any person injured *in such accident* reasonable assistance, including . . . the making [of] arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary."

It was also held that the language quoted does not limit the performance of such acts to drivers of automobiles which strike and injure a pedestrian, or which are involved in a collision with other vehicles. That it includes all machines which are involved in accidents of any nature whatever in which another individual is injured or killed.

As defined in Webster's Dictionary, an accident is an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event. (See, also, *United States* v. *Rogers,* 120 F.2d 244, 246.)

We conclude that, insofar as the defendants are concerned,

an "accident" occurred within the meaning of section 480 of the Vehicle Code.

Defendants Kennelley and Mrs. Green contend that the evidence was insufficient to support the verdicts of the jury in that it was not shown that either of them was driving the station wagon at the time of the accident and in that connection direct our attention to section 69 of the Vehicle Code, which provides as follows:

"Driver. 'Driver' is a person who drives or is in actual physical control of a vehicle."

There are cases which hold that persons other than the actual driver of an automobile may be found guilty of the offense herein charged where it was shown that someone other than the person behind the wheel had control over the operation of the car and committed some act at the time of the accident to aid, abet or encourage the actual driver to leave the scene of the accident in violation of the statute. In *People* v. *Steele,* 100 Cal.App. 639 [280 P. 999], the defendant Kearney was a passenger at the time of the accident in a car owned by his employer but under his control. After the car had proceeded four blocks from the point of collision, he took the wheel and drove speedily in a direction away from the victim. By so doing, said the court, he became a principal.

In *People* v. *Odom,* 19 Cal.App.2d 641 [66 P.2d 206], the defendant, a joint owner of the vehicle involved, was riding therein at the time of the accident and had the absolute right to direct and control his sixteen-year-old boy in its operation, and in fact did instruct him to drive on after the accident. The court stated, at page 647:

"The offense of failing to stop an automobile which has struck and injured a person and to render assistance to the victim of the accident, as provided by section 480 of the Vehicle Code, applies with equal force to the owner of the machine who is riding therein at the time of the accident with full authortiy to direct and control the operation as it does to the person who is actually driving the vehicle. The term 'driver of the vehicle' as it is used in the statute includes the owner of the machine who is present and has the control of its operation." (Citing *People* v. *Rallo,* 119 Cal.App. 393, 397 [6 P.2d 516]; *People* v. *Steele,* 100 Cal.App. 639, 644 [280 P. 999]; *People* v. *Maggio,* 90 Cal.App. 683 [266 P. 813].)

In the Rallo case, *supra,* at page 397, the court held that the

owner of a machine who is riding therein, having control of its operation at the time of an accident, may be deemed to be the driver thereof for the purposes of section 141 of the California Vehicle Act even though another person may be actually seated at the steering wheel.

A consideration of these cases leads us to the conclusion that the evidence is insufficient to support the implied finding of the jury that defendant Kennelley or Mrs. Green exercised or had the right to exercise control over the operation of the car at the time of the accident. The car (which was owned by Dehart) was being driven by defendant Green at the time of the accident and he continued to drive it until it was abandoned. There is no evidence in the record that Kennelley or Mrs. Green suggested that he drive on after the accident happened and it was not shown that either of them exercised control of the vehicle.

It is argued by the attorney general that defendants Kennelley and Mrs. Green aided and abetted defendant Green in the commission of the offense charged and are, therefore, liable as principals. It is true, as stated in *People* v. *Cowan*, 38 Cal.App.2d 231, 239 [101 P.2d 125, 135], that

"Where persons are not actors in the actual commission of the crime charged, but aid and abet others in its commission or procure others to commit the crime, all are equally guilty."

However, to authorize the conviction of one as an aider and abettor in the commission of a criminal act, the evidence must show, not only that he aided and assisted in the doing thereof, but also that he abetted the actor—i.e., that he aided, with guilty knowledge or intention, the actual perpetrator in the commission of the act. (4 Cal.Jur. 10-Yr. Supp. 559.) The evidence does not show that the defendants Kennelley and Mrs. Green aided or assisted defendant Green in driving from the scene of the accident and does not show that either of them participated in the crime charged. In this connection, it should be noted that the first count of the information contained a charge that the defendant did unlawfully and feloniously take personal property consisting of a wallet and contents from the possession and immediate presence of Dewey L. Dehart, against his will, and in the second count the defendants were charged with a violation of section 503 of the Vehicle Code in that they did on or about the same date drive a vehicle, a Ford station wagon, belonging to Dewey L. Dehart upon a public highway, without his consent and with the intent to deprive him of the vehicle. The jury found all defendants not guilty

of these two charges and we are not here concerned with a situation wherein the crime charged in the third count of the information might have been committed in the perpetration of the offenses charged in counts one and two.

The defendants Kennelley and Mrs. Green contend that the court erred in instructing the jury as to the law relative to the responsibility of one who aids and abets a driver of a vehicle involved in an accident and their contention seems to be that the instruction should not have been given when there was no evidence that would establish that the defendants were aiding or abetting the driver. However, a determination of this question is unnecessary to this decision.

It is the contention of defendant Green that the deputy district attorney who tried the case was guilty of prejudicial misconduct by introducing evidence of defendant's prior record when he had in fact admitted his alleged prior conviction at the time of his arraignment. The deputy conducting the trial took the witness stand and testified on behalf of the People. He testified that the defendant, Amos Moody Green, had made a statement to him during the course of the conversation between them that several years ago he had been convicted of a felony in the State of Texas; that he had been arrested for another burglary other than the one for which he was convicted and also that he was familiar with criminal procedure in California and in Texas. Counsel for Mr. Green moved the court to instruct the jury to disregard the deputy's testimony as to his first conversation with Mr. Green during which the foregoing statements were made. The motion was submitted and granted and the court ordered that all members of the jury should wholly disregard the testimony of the deputy as to certain alleged prior convictions of felony, and any and all inferences that might be drawn from the testimony that was given.

Section 1025 of the Penal Code provides, among other things, that in case a defendant pleads not guilty and answers that he has suffered a previous conviction alleged, the charge of the previous conviction must not be read to the jury nor alluded to on the trial.

In the instant case the attorney general attempts to justify the introduction of the part of the statement objected to on the theory that it was part of a conversation in which the defendant Green made certain material admissions concerning the commission of the crime. It is argued that by reason of these

material admissions the entire conversation was admissible. The record indicates, however, that the testimony objected to was severable from the balance of the conversation and we think that it was error to permit the objectionable statements in evidence. However, where, as here, the conduct of the deputy district attorney is assigned as prejudicial, and the evidence clearly supports the conviction a reversal is not justified when it appears that the jury in all probability would have rendered a verdict of guilty even in the absence of any dereliction on the part of the district attorney. (*People* v. *Godsey,* 71 Cal.App.2d 82, 93 [162 P.2d 46].) Under section 4½ of article VI of the Constitution of the State of California reviewing courts are not permitted, where matters prejudicial in their character appear in the record, to reverse such judgments unless from the entire record it appears that there has been a miscarriage of justice. (*People* v. *Kizer,* 22 Cal. App. 10, 20, 21 [133 P. 516, 521, 134 P. 346] ; *People* v. *Cassidy,* 86 Cal.App. 45, 53 [260 P. 313].)

In the instant case the evidence clearly establishes the guilt of defendant Green and we are not prepared to say that a miscarriage of justice, insofar as defendant Green is concerned, resulted from the error committed.

The judgment against the defendant Amos Moody Green and the order denying a new trial are affirmed. The judgment and orders denying a new trial as to the defendants Kirby K. Kennelley and Virginia Ann Green are reversed.

Barnard, P. J., and Griffin, J., concurred.