GRIFFIN *v.* STATE

No. 41979 December 4, 1961 135 So. 2d 198

*Clayton Lewis,* Philadelphia, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

McElroy, J.

Lake Griffin was convicted of manslaughter in the Circuit Court of Neshoba County and sentenced to serve ten years in the state penitentiary, from which verdict he appeals to this Court. Clifton Eakes was killed about

6 P. M. on the evening of the 8th of October 1960 on Highway 16, which runs east and west, as he was traveling west and attempting to turn north into his driveway. The car that caused the collision was driven by a sixteen-year old boy, Willie Melvin Griffin, son of Lake Griffin, the defendant. They were jointly indicted under the Culpable Negligence Manslaughter Statute, Section 2232, Miss. Code 1942, Recompiled. A severance was requested and granted, and Lake Griffin was tried and convicted.

The only point raised on this appeal is that the court erred in not granting the defendant a directed verdict at the conclusion of all of the evidence offered by the State and the defendant, and the appellant's motion for a new trial being overruled.

The testimony in this case is to this effect: Highway 16 crosses the Kemper-Neshoba County Line, running in an easterly, westerly direction. Around 6 P. M. of October 8, 1960, Patrolman Smith stopped a motorist for a taillight violation a short distance inside Kemper County. While helping the offender to fix his taillight, a car passed going in a westerly direction, occupied by appellant, his son and others. The patrolman attempted to flag the car and shouted at them because the headlights of the Griffin car were not turned on. As soon as the patrolman could get into his car, he turned around and pursued the Griffin car. This pursuit crossed the county line into Neshoba County, and while he attained a speed of 80 miles per hour, the Griffin car was traveling at a more rapid rate. Being visible in his headlights, the patrolman witnessed the wreck which resulted in the death of Clifton Eakes at a point in Neshoba County approximately 1.4 miles from where the chase started. At this point on the highway, running off to the north, was the entrance to the Eakes home. Eakes was driving an automobile belonging to a passenger. He had all of his lights on, including blinkers, indicating that he was

attempting to make a right-hand turn. At the point of impact, 48 feet east of the entrance to the Eakes driveway, and being entirely on the right side of the highway, the Griffin car struck the rear of the Eakes car. Mr. Eakes was seriously injured and died about two and one-half hours later. As the occupants of the Griffin car were getting out, the patrolman observed that appellant was seated in the middle of the front seat and that his sixteen-year old son was the driver. Lake Griffin was intoxicated.

Prior to this time, defendant overheard a conversation in which the patrolman stated that he was working in Kemper County. The car driven by Willie Melvin Griffin was a 1951 Chrysler, which was registered in the name of Bobby Clemmons. Clemmons could not pay the finance company and Lake Griffin financed it, with the understanding that he was to have possession until repaid. Thus the possession and control of the car was turned over to Lake Griffin. Neither Willie Melvin Griffin nor Lake Griffin had a driver's license. The defendant's license had been taken away from him prior to the accident due to driving while intoxicated.

At the time of the arrest, the patrolman had a conversation with the defendant. He made a free and voluntary statement to this effect: He was "going to tell the truth; that he told the boy not to stop; to go on and try to get away; and to drive fast and not to stop." He also stated that he was in control of the car and that his son was under his direction and control, and that he requested the boy to drive the car at the time in which the collision occurred and Mr. Eakes received injuries resulting in death. Willie Melvin Griffin testified that he was driving the car like his daddy told him; that he would have carried out the instructions of his daddy,—if he had told him to drive faster, that he would have driven faster,—and that he would have done whatever he was told. He also stated in a conversation with

the sheriff while in jail in the presence of his father, the defendant, ''Daddy here told me to step on it, to get out of the way, to get on across the county line and the highway patrolman would not bother us then.''

As stated, the only assignment of error is that the lower court erred in overruling the motion of the defendant for a directed verdict, and in refusing a peremptory instruction which would instruct the jury to find him not guilty, at the conclusion of the evidence offered in this case.

 ■ Section 1995, Miss. Code 1942, Recompiled, states: ''Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not.''

See 61 C. J. S., Motor Vehicles, Section 657, subsection c., p. 761, which states ''One may be guilty of a criminal homicide for a death caused by the operation of a motor vehicle where he aids or abets another therein, as where the driver of a motor vehicle, in pursuance of an agreement, races with the driver of another car whose excessive and unlawful speed results in an accident causing a death, or where the owner of a motor vehicle is present and acting in concert with the driver, or urges and encourages the driver to drive at an excessive speed which causes an accident and the death of another, or where the owner knowingly puts the motor vehicle in the immediate control of a careless and reckless driver, sits by his side, and without protest permits him so recklessly and negligently to operate it as to cause the death of another * * *''

5 Am. Jur., Automobiles, Sec. 759, p. 912, states: ''The owner or person in control of an automobile may be criminally liable for an offense committed in operating it, not only when he is operating it personally, but also when he procures or permits the car to be driven by

another person who is in the car with him. This is true where a homicide is committed in operating the automobile.''

In Volume 8, Permanent Edition of Blashfield, Cyclopedia of Automobile Law and Practice, Section 5351, pp. 134, 135, 136, it is said: ''If the owner of a dangerous instrumentality, like an automobile, knowingly puts it in the immediate control of a careless and reckless driver, sits by his side, and permits him, without protest, so recklessly and negligently to operate the car as to cause the death of another, he is as much responsible as the man at the wheel. * * * An occupant of an automobile, at the time of the commission of an offense, because of the speed or reckless manner in which it was driven, may be criminally liable, although not actually in control of the machine at the time of the offense, for example, an owner who urges and encourages the driver to drive at excessive speed which results in a collision can be a coprincipal in the commission of a homicide.''

In the case of Schorr v. State, 132 S. W. 2d 898, it is said that ''Appellant's first complaint is that the court erred in declining to sustain his motion to quash the complaint and information on the ground that appellant and Arnold could not be co-principals in the commission of the offense charged, because it was a physical impossibility for both to be driving the same car at the same time and place.

''This proposition is, of course, true as a physical fact, but is not true as a legal proposition. Appellant could be a co-principal by urging and encouraging Arnold, the driver, to drive the car at a speed in excess of that allowed by law, and yet never touch the mechanism by which the car is put into motion and by which it was being operated.

''It is true, however, that in order to bring appellant within the term 'principal' he must have aided, abetted or encouraged by words or gestures, the driver to violate

the speed law, which act, according to the state's theory, led to the collision and caused the death of the injured person. * * * ''

See also Vernon S. Story v. United States of America, 16 F. 2d 342, 53 A. L. R. 246; Puckett v. State, 144 Neb. 876, 15 N. W. 2d 63; People v. Steele, 100 Cal. App. 639, 280 P. 999; J. B. Joiner v. The State of Texas, 279 S. W. 2d 333; 42 A. L. R. 1114; State of South Carolina v. Davis, 70 S. E. 811, 88 S. C. 229; Reeves v. State, 38 Ga. App. 86, 143 S. E. 462.

In the case of State of North Carolina v. Wilfong Trott, 130 S. E. 627, 42 A. L. R. 1114, it was held that ''It would be idle to say that Michael's reckless driving was unintentional, or that he did not know the speed of the car was excessive when the collision occurred. Indeed, it is not unreasonable to infer that he was conscious of a 'malignant recklessness of the lives and safety of others' when for the last time he drove the car down the street. It is hardly less evident that the defendant a short time before commanded a speedy removal of the car to avoid arrest, and that, although intoxicated, he was not irresponsible. Over the car he had absolute control; he had procured or assisted in procuring the whisky; and he was responsible at least in part for Michael's condition. After making Michael his chauffeur, and ordering him 'to get away' from the garage, he cannot now disclaim responsibility for the operation of the car under circumstances from which may be implied the malice that distinguishes murder in the second degree from the lesser crime of manslaughter. * * *''

We are therefore of the opinion that the case should be, and is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Gillespie* and *Jones, JJ.,* concur.